SELECTMEN OF BROOKLINE *vs.* LEON L. ALLEN & another.

Norfolk.    December 8, 1949. — March 9, 1950.

Present: QUA, C.J., LUMMUS, WILKINS, SPALDING, & COUNIHAN, JJ.

*Retirement.    Pension.    Words,* "Highest annual compensation."

The "highest annual compensation" forming the basis for computation of payments to a town patrolman retired under the provisions of § 85E, inserted in G. L. (Ter. Ed.) c. 32 by St. 1946, c. 576, § 6, included sums voted by the town and paid to him before his retirement as an additional monthly variable cost of living increase of salary, called "extra emergency compensation," to continue "until otherwise voted by the town" or until a stated decline occurred in the "monthly cost of living index."

A town patrolman retired in April of 1947 under § 85E, inserted in G. L. (Ter. Ed.) c. 32 by St. 1946, c. 576, § 6, was entitled to have the stated statutory basis of "highest annual compensation" calculated upon his regular annual salary plus varying amounts added thereto under a vote of the town as "extra emergency compensation" in the five months ending at the time of his retirement.

BILL IN EQUITY, filed in the Superior Court on March 24, 1948.

The suit was heard by *Hanify,* J., on agreed facts. A final decree was entered declaring "that 'extra emergency compensation' does not come within the meaning of the words 'highest annual compensation at the time of retirement' contained in § 85E of c. 32 of the General Laws and should not be included in computing the pension of the defendant Thompson."

*D. J. Kelly,* (*T. J. Colbert* with him,) for the defendant Thompson.

*D. G. Rollins,* for the plaintiffs.

*C. A. Leavitt,* for the defendant Allen.

WILKINS, J.   This bill in equity seeks, primarily, a binding declaration, G. L. (Ter. Ed.) c. 231A, inserted by St. 1945, c. 582, § 1, as to the manner of determining the amount of a noncontributory pension payable to the defendant Thompson, a retired police officer of the town of Brookline, and, secondarily, an order against the defendant Allen, the town accountant, to approve a warrant for payment of the pension submitted to him by the plaintiff board. The issues are presented in a three-sided argument, the contentions of the plaintiff board being opposed by the defendants, who also differ with each other.   From a decree in accord with the contentions of the defendant Allen, the defendant Thompson appealed.   The facts were agreed.

On April 21, 1947, by vote of the plaintiff board the defendant Thompson, a patrolman, was retired, pursuant to G. L. (Ter. Ed.) c. 32, § 85E, inserted by St. 1946, c. 576, § 6, at "one half of the highest annual compensation received by him while holding the grade held by him at the time of his retirement . . . and an additional amount equal to one per cent for each year of service after the first twenty; provided, that the total amount of such pension shall in no case exceed sixty-five per cent of said compensation."   During the last twelve months of his service the defendant Thompson received a regular salary at the annual rate of $2,600 (hereinafter called base pay).

Beginning in December, 1946, and continuing to the date of his retirement, he received an additional monthly variable cost of living increase in salary under a vote of a town meeting held on November 26, 1946.   This vote appropriated a sum "for the payment during the four months from and after December 1, 1946, or until otherwise voted by the town, of extra emergency compensation" to various persons in the service of the town, such compensation to be computed "by multiplying that part not exceeding $133.33

of the base salary . . . for the preceding month" by a percentage derived in part from the combined cost of living index issued for the preceding month by the division on the necessaries of life of the department of labor and industries. The vote further provided, "Said compensation shall be discontinued when said monthly cost of living index declines to within 26% of the 1935–1939 base." The "extra emergency compensation" received by the defendant Thompson was $29.33 in each of the months of December, 1946, and January and February, 1947; $28 in March, 1947; and $30.66 in April, 1947; a total of $146.65.

The defendant Thompson has received a pension at the annual rate of $1,690, or $140.83 monthly, representing sixty-five per cent of his base pay at the time of retirement. This is the amount called for by the decree and in accordance with the contention of the defendant Allen.

The defendant Thompson contends that the "highest annual compensation" includes not only the base pay but also the highest single monthly "extra emergency compensation" payment received during the twelve-month period prior to his retirement, $30.66 (received in April, 1947), multiplied by twelve, or $367.92.

The plaintiff board agrees that "extra emergency compensation" is to be considered in computing the pension, but disagrees as to the amount, contending that the "highest annual compensation" is the defendant Thompson's base pay at the time of retirement plus the average of the five "extra emergency compensation" payments multiplied by twelve, or $351.96. The warrant referred to in the bill which the defendant Allen refuses to pay is computed on this theory.

The defendant Allen, who alone contends that the "highest annual compensation" under § 85E embraces nothing on account of "extra emergency compensation," relies upon the definition of "Regular compensation" in c. 32, § 1, as appearing in St. 1945, c. 658, § 1, as used in §§ 1–28, inclusive, relative to contributory pensions, and an amendment to that definition by St. 1948, c. 606, providing that

after June 30, 1948, "Regular compensation" shall include "cost of living bonuses and cost of living pay adjustments." He argues that until the last mentioned date cost of living payments were not included under the contributory retirement act. Doubtless this may be conceded for present purposes. The defendant Allen also relies upon the phraseology of c. 32, § 58, as appearing in St. 1943, c. 514, § 3, relating to the retirement of a veteran at "one half of the highest regular rate of compensation," which was amended by St. 1948, c. 665, § 3, effective October 1,. 1948, to read, "one half of the highest annual rate of compensation, including any bonuses paid in lieu of additional salary or as a temporary wage increase." He argues that prior to the effective date of the amendment "highest regular rate of compensation" in the cases of veterans did not include temporary wage increases. For present purposes, this also may be conceded. See c. 32, § 56, as appearing in St. 1943, c. 514, § 1, as amended by St. 1948, c. 665, § 1; c. 32, § 57, as appearing in St. 1948, c. 665, § 2. Accordingly, it is asserted that the intent of the Legislature was not to include "extra emergency compensation" in "highest annual compensation" in § 85E. But there is an obvious difference between "highest regular rate of compensation" and "highest annual compensation," and the Legislature apparently felt that it was necessary to redefine or to do away with the former phrase in order to include cost of living allowances in computing certain pensions. The omission to amend § 85E also seems of no significance in determining the legislative intent as to what is "highest annual compensation" under that section.

It is further contended that "extra emergency compensation," both by its very name and by the substance of the town meeting vote creating it, is a temporary matter, and, therefore, does not meet the description of a compensation described as "annual." As to this, let it be said that the substance, and not the name, determines. *Attorney General v. Woburn,* 317 Mass. 465. The vote made an increase in compensation which was payable for four months "or until

otherwise voted." For aught that appears, the increase was still in effect when the case was heard and may be now. It definitely did continue in effect for five months at least, until the retirement of the defendant Thompson. It was to continue until the "cost of living index declines to within 26% of the 1935–1939 base." There is nothing to show the fulfilment of this condition subsequent. Arguments based upon the supposed intent of the town, whatever it may have been, are of no consequence. The legislative intent is what governs. Objection is also made that these payments cannot be part of an "annual" amount, being variable from month to month, and so from year to year, and further that one cannot tell whether the Legislature meant a calendar year, a fiscal year, the twelve months antedating the retirement of each individual, or some other yearly period. But the easiest way out is not necessarily the fairest course to follow. It cannot be gainsaid that by the vote the compensation of the defendant Thompson underwent an increase, which was still in effect when he retired. In the absence of more compelling reasons than have been brought to our attention, and having in mind the beneficent purposes of retirement payment statutes, we are unwilling to say that the payments voted as "extra emergency compensation" must not be considered as part of the "highest annual compensation" under § 85E.

A troublesome question is how to compute the amount when the one to receive the pension did not serve for a full year after the effective date of the vote. We cannot accept the contention of the defendant Thompson. To do so is to take the highest monthly compensation, not the highest annual compensation. Likewise we are unable to follow the plaintiff board in converting the average compensation of the five highest months into a yearly figure. Taking the actual experience of the first twelve months under the vote is not permissible, because the amount of the pension must be capable of computation at the time of retirement. Although not a perfect result, the nearest approach to justice permitted by § 85E, we believe, is to take the total

of the five monthly payments of "extra emergency compensation" made to the defendant Thompson. If it be objected that this deprives him of seven months more under the vote, the answer is that in his case the "highest annual compensation" covered a period when he served only five months under the vote.

The final decree is reversed, and a new final decree is to be entered declaring that "extra emergency compensation" comes within the meaning of the words "highest annual compensation . . . at the time of his retirement," contained in G. L. (Ter. Ed.) c. 32, § 85E; and that in computing the pension of the defendant Thompson there shall be added to the base pay the five monthly "extra emergency compensation" payments actually received by him during the last year of his service.

*So ordered.*