JAMES J. COTTER & others vs. CITY OF CHELSEA.

Suffolk.   May 7, 1952. — October 29, 1952.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, & SPALDING, JJ.

*School and School Committee.   Municipal Corporations*, Employees, Municipal finance.   *Gift.   Contract*, Of employment.   *Evidence*, Judicial notice.

A "dependency allowance" in a specified amount per annum granted by vote of a school committee to married teachers having certain dependents was intended as a permanent future increase in their salaries and was not a gift.   [315–316]

The "equal pay law" for men and women teachers in public schools, G. L. (Ter. Ed.) c. 71, § 40, as amended, does not prevent differentiation in pay between teachers according to reasonable and lawful classifications not discriminatory between the sexes, although based on factors other than the factors of grade, type of work and preparation and training mentioned in the statute.   [316]

A vote by a school committee "that all married teachers who are the sole support of his own wife, her own husband or his or her own children under eighteen years of age be granted a dependency allowance of" a specified amount per annum did not discriminate between the sexes and did not violate the "equal pay law" for men and women teachers, G. L. (Ter. Ed.) c. 71, § 40, as amended, which the municipality had accepted.   [315–317]

This court took judicial notice that securing the most competent teachers for the public schools had become a considerable problem.   [319]

A "dependency allowance" in a specified small amount per annum granted by vote of a school committee in 1947 to married teachers having certain dependents was sustained as a compensation classification which might reasonably be thought by the committee to promote the good of the school system; the omission of unmarried teachers with similar dependents from the vote was within the discretion of the committee and did not render the vote invalid.   [317–319]

A school committee could include the superintendent of schools and the attendance officer in a system of "dependency allowances" previously granted to "teachers" by including a sum to pay the superintendent and the attendance officer such allowances in its estimates and request for appropriation for a certain year.   [319–320]

PETITION, filed in the Superior Court on May 1, 1950.

The case was reported by *Forte*, J.

*A. Kenneth Carey*, (*Francis J. Grondin* with him,) for the petitioners.

*Alexander E. Finger*, City Solicitor, for the respondent.

*Claude B. Cross* & *Charles C. Worth*, by leave of court, submitted a brief as amici curiae.

QUA, C.J. This is a petition by ten or more taxable inhabitants of the city under G. L. (Ter. Ed.) c. 71, § 34, as appearing in St. 1939, c. 294, to require the city to provide a sum of money (plus twenty-five per cent thereof) equal to an alleged "deficiency" resulting from the failure of the city to appropriate for public schools in 1950 the full amount estimated and requested by the school committee. The case was presented to the Superior Court on a statement of agreed facts, and was reserved and reported without decision.

On November 25, 1947, the school committee voted "that all married teachers who are the sole support of his own wife, her own husband or his or her own children under eighteen years of age be granted a dependency allowance of $300 per annum." The principal question presented is whether this vote was valid, so that the city was obliged to appropriate a sum sufficient to cover the so called allowances. The city had previously accepted the "equal pay law," G. L. (Ter. Ed.) c. 71, § 40. This section as appearing in St. 1949, c. 684, contained these provisions, "Women teachers employed in the same grades and doing the same type of work with the same preparation and training as men teachers shall be paid at the same rate as men teachers. Such equal pay shall not be effected by reducing the pay of men teachers."[1] In 1950 there were in Chelsea two hundred thirty day school teachers of whom seventy-one were men and one hundred fifty-nine were women. Under the vote of the committee sixty-five men and five women would be entitled to the "dependency allowance."[2]

The city has argued that this "dependency allowance"

---

[1] The change made by St. 1951, c. 499, does not affect the provisions above quoted.

[2] The amici curiae in their brief assert that under a rule of the school committee of Chelsea marriage of a female teacher automatically terminates her services. The record does not show this, and does show, as stated above, that in 1950 certain married women teachers were eligible for the "dependency allowance."

was a mere gift. We do not think so. It was not intended as a single payment for services previously rendered. It was evidently intended as a permanent future increase in the salaries of those entitled to it as a part of the compensation for their work. It was actually paid to them for more than two years before the city refused the necessary appropriation for the year 1950. It had fewer of the elements of a gift than did the so called "bonus" held valid in *Attorney General* v. *Woburn,* 317 Mass. 465, or the pay for "sick leave" held valid in *Averell* v. *Newburyport,* 241 Mass. 333, and in *Quinlan* v. *Cambridge,* 320 Mass. 124, or the vacation pay held valid in *Wood* v. *Haverhill,* 174 Mass. 578. Compare *Whittaker* v. *Salem,* 216 Mass. 483. See *Friend* v. *Gilbert,* 108 Mass. 408; *Selectmen of Brookline* v. *Allen,* 325 Mass. 482, 485–486.

It is also argued that the vote violates the "equal pay law." We do not see that it does. We think that this statute must be construed in the light of its obvious purpose, which was to secure general equality between men and women teachers in the matter of pay. We do not think that it was intended to prevent differentiation among teachers based upon classifications which the school committee could reasonably and lawfully make, whether or not based upon grade, type of work, and preparation and training, so long as they were not discriminatory between the sexes. It does not mean that every woman teacher must necessarily receive the same pay as every man teacher, even if doing the same type of work in the same grade with the same preparation and training without regard to any other consideration, any more than it means that every woman teacher must necessarily receive the same pay as every other woman teacher in the same circumstances. If the statute meant that committees could take into account nothing but the three factors mentioned in the statute, its practical effect would be to forbid them to make any salary differences based upon such important factors as demonstrated ability to teach, "capacity for the government of schools" (G. L. [Ter. Ed.] c. 71, § 38), and other important factors, and so

would cut down the committees' freedom of action in matters having nothing to do with sex. See *School District No. 10 in Uxbridge* v. *Mowry*, 9 Allen, 94; *Board of School Trustees* v. *Moore*, 218 Ind. 386; *Morris* v. *Williams*, 149 Fed. (2d) 703, 708. We do not think that the vote here in question does discriminate between the sexes. It does directly affect more men than women, but this must be because there are more married men teachers with dependents than there are married women teachers with dependents. Married women teachers with dependents, of whom there are a few, do share in the benefit on an exact level with the men. This view seems to be substantially the same as that expressed in relation to a similar statute in *Liva* v. *Board of Education of Lyndhurst*, 126 N. J. L. 221. See *Moses* v. *Board of Education of Syracuse*, 245 N. Y. 106.

We are now brought to the question whether the school committee had power to classify any teachers as to compensation with relation to their having or not having persons dependent upon them for support. School committees have "general charge" of public schools and undoubtedly have full power to make reasonable and proper contracts with teachers and to fix their pay. G. L. (Ter. Ed.) c. 71, §§ 37, 38. *Batchelder* v. *Salem*, 4 Cush. 599. *Watt* v. *Chelmsford*, 323 Mass. 697, 700, and cases cited. *Attorney General* v. *Ware*, 328 Mass. 18, 20. But, as with other boards charged with the performance of public functions, all of their acts must be within the authority committed to them and must bear some rational relation to the furthering of the objects for which the board exists. *Quinlan* v. *Cambridge*, 320 Mass. 124, 130–131. *Kinzer* v. *Directors of the Independent School District of Marion*, 129 Iowa, 441, 444, 445. When a public board sets up standards of pay not directly related to the work performed but varying with the private personal status of the employee it is treading upon dangerous ground. See *Houghton* v. *School Committee of Somerville*, 306 Mass. 542, 544. School committees are not charged with the task of ironing out the inequalities of life or setting up systems of social welfare. If the vote is to

be held valid it must be because the committee could rea-
sonably believe that it would be for the good of the school
system to pay more for teachers having dependents.   In
*Rinaldo* v. *School Committee of Revere,* 294 Mass. 167, we
held, following *Sheldon* v. *School Committee of Hopedale,* 276
Mass. 230, that a school committee could exclude married
women from its teaching force, but that decision rested
upon special grounds, including the existence of a widely
held belief that it was better for the schools that married
women should not teach in them.   To the same effect is
*Houghton* v. *School Committee of Somerville,* 306 Mass. 542.
See *Coleman* v. *School District of Rochester,* 87 N. H. 465,
471–472.   In *Opinion of the Justices,* 303 Mass. 631, at pages
646–650, 656, all of the justices concluded that the exclusion
from public employment generally of married women as a
class in favor of unmarried women as a class could not
reasonably be supported either upon the ground of any
difference in qualifications or upon any other proper ground
and was unconstitutional;   and at pages 650–651, 653–654,
655, a majority of the justices concluded that the exclusion
from public employment generally of married women whose
husbands were bound to support them and were able to do
so was likewise unconstitutional.   A few years later these
conclusions were incorporated into the decision of the court
in *Mayor of Somerville* v. *District Court of Somerville,* 317
Mass. 106.

On the other hand, the court should be slow to decide
that a public board has acted unreasonably or arbitrarily.
The court should cast about to discover, if possible, some
ground which reasonable men might deem proper on which
the action can rest.   And in the case before us there has
been no attempt wholly to exclude any class of persons
from employment as teachers.   It is simply a question
whether making the amount of salary depend to some small
extent upon the situation of the teacher with respect to de-
pendents can be thought by a reasonable school committee-
man to have some effect in producing more efficient schools.
On the whole, we incline to the view that the vote can be

sustained. It is not that married teachers with dependents are for that reason likely to be better teachers than other persons — a proposition which it might be difficult to maintain. Rather the reason is that in a time when many consider the teaching profession underpaid as compared to the rising cost of living, but when, nevertheless, there is great resistance to increased municipal tax rates, and when therefore the securing of the most competent teachers for the public schools has become a considerable problem, of the existence of which the court may take judicial notice (see *Chartrand* v. *Chartrand*, 295 Mass. 293, 295; *Howes Brothers Co.* v. *Unemployment Compensation Commission*, 296 Mass. 275, 291; *Assessors of West Springfield* v. *Eastern States Exposition*, 326 Mass. 167, 170), it may be thought with some justification that the more mature, experienced, and competent teachers are those most likely to be married and to have dependents, and that some recognition of the additional burden which such teachers carry will have some effect in the long run in securing and in retaining for the public schools the services of teachers of that type. Whether in fairness unmarried teachers with dependents ought to have been included in the vote we think was a matter for the school committee to decide. We are not quite prepared to say that failure to include them renders the entire vote invalid. *Liva* v. *Board of Education of Lyndhurst*, 126 N. J. L. 221, 224. See *Phelps* v. *Board of Education of West New York*, 300 U. S. 319, 323–324. Compare *Hutton* v. *Gill*, 212 Ind. 164.

It is not to be assumed that in going as far as we have in supporting this slight incursion by the school committee, in conditions now known to exist, into the field of domestic economy we would support further or different incursions.

The city seems to raise a question as to the status of the superintendent of schools and the attendance officer for both of whom an "allowance" was apparently included in the estimates and request for appropriation of the school committee, although they may not have been "teachers" within the meaning of the vote hereinbefore quoted. If we

assume that these persons were not teachers, we are nevertheless of opinion that the school committee could include them in the system of "allowances" by including a sum to pay such "allowances" in their estimates and request for appropriation. *Ring* v. *Woburn*, 311 Mass. 679. *O'Brien* v. *Pittsfield*, 316 Mass. 283, 285–287.

The city concedes that, if the vote of the committee is valid, the amount of the deficiency is $32,816.50. [1] A decree is to be entered in favor of the petitioners requiring the city to provide that sum or such part thereof as shall not already have been provided, together with a sum equal to twenty-five per cent thereof, all in accordance with the provisions of G. L. (Ter. Ed.) c. 71, § 34, as appearing in St. 1939, c. 294.

*So ordered.*

_____

[1] As we understand the agreed facts, only $14,400 was required to meet the "allowances" which are the subject of controversy. It is conceded, however, that the remainder of the "deficiency" should have been appropriated, presumably for items not now disputed.