358 Mass. 443                                                    443

Glen Avenue Realty Corp. Inc. *v.* Director of Public Health of Wilmington.

GLEN AVENUE REALTY CORP. INC. *vs.* DIRECTOR OF PUBLIC HEALTH OF WILMINGTON & another[1].

Middlesex.    November 3, 1970. — December 21, 1970.

Present: TAURO, C.J., SPALDING, KIRK, REARDON, & QUIRICO, JJ.

*Sewage Disposal.    Public Health.*

In a mandamus proceeding to compel the appropriate public officials of a town to grant permits for the construction of sewage disposal systems on two lots in a subdivision, warranted findings by the trial judge, including findings that "the evidence and photographs indicate the lots . . . to be wet areas" and that "taking the lots in their existing condition the provisions of the [State Sanitary] Code have not been met," supported his conclusion that the denial of the permits was not unreasonable, and there was no error in an order for judgment dismissing the petition.

---

[1] Board of Health of Wilmington.

PETITION for a writ of mandamus filed in the Superior Court on February 14, 1968.

The case was heard by *Taveira*, J.

*Dean E. Nicholson* (*Sidney J. Rosenthal* with him) for the intervener Meredith Mortgage Corporation.

*Alan Altman*, Town Counsel, for the respondents.

REARDON, J.   In this petition for a writ of mandamus, the petitioner seeks an order compelling the respondents to grant permits to construct sewage disposal systems on two lots in a subdivision located in Wilmington.   Judgment dismissing the petition was ordered by a judge of the Superior Court.   The case is brought here by an appeal of Meredith Mortgage Corporation, an intervener and present owner of record of the lots.   The judge made findings, which are before us as is a transcript of the evidence.   The exhibits introduced at the trial are incorporated in the record by reference.

On February 7, 1968, the respondents, through the respondent Director of Public Health of Wilmington, denied issuance of the permits by reason of failure to comply with art. XI of the State Sanitary Code.   The two lots were already subject to restrictions based on their unacceptability for proper sewerage placed on them in 1953 when a plan of the subdivision in which they were located was approved.

We apply the well known standard of review "testing whether the order for dismissal is warranted by the judge's findings subject to their being supported by the reported evidence."   *Mariano* v. *Building Inspector of Marlborough*, 353 Mass. 663, 665.   *Gordon* v. *O'Brien*, 320 Mass. 739, 740.   *Schafer* v. *Zoning Agent of Bellingham*, 351 Mass. 651, 653.

Certain percolation and deep pit tests were conducted on the lots pursuant to regulation 14 of the code (art. XI).[2]   The respondents contend that these tests demonstrated the unsuitability of the lots for sewage disposal tested against regulations 7.2, 7.3, and 14.1e (6) of the code.   Pertinent

---

[2] "14.1a.   At least one percolation test shall be performed at the site of each disposal area.   More than one test will be required where the soil structure varies or where large disposal areas are required."

358 Mass. 443                                   445

Glen Avenue Realty Corp. Inc. *v.* Director of Public Health of Wilmington.

provisions of these several regulations provide respectively that (1) "[d]isposal fields shall not be constructed in areas where the maximum ground water elevation is less than four feet below the bottom of the disposal field. Provided, that in instances where the undisturbed soil consists of porous sand or gravel with a percolation rate of two minutes or less per inch, the maximum ground water elevation may be not less than two feet below the bottom of the disposal field. . . ."; (2) "[e]xcavations into or fill upon impervious material shall not be allowed";[3] and (3) "[s]oil with a percolation rate of over 30 minutes per inch is considered impervious and therefore unsuitable for the subsurface disposal of sewage." In support of their position the respondents cite one percolation test on each lot where the percolation time was over thirty minutes an inch, and argue also that the disposal bed proposed on each lot was to be but two feet above the maximum ground water elevation. In response, the petitioner relies on other tests which showed a much more rapid rate of percolation and argues that the tests should have been averaged, a position finding no support in the code. The petitioner further argues that its proposal that soil in the location of both disposal beds be replaced to a depth of four feet below the septic tanks with bank run gravel having a percolation test rate of two minutes or less a square inch before and after placement meets the respondents' second objection. This replacement the petitioner contends would come within the definition of "undisturbed soil" in the proviso to regulation 7.2, a contention disputed by the respondents, who aver "undisturbed soil" means natural soil and not fill.

The judge, applying the proper standard for review (*Cotter* v. *Chelsea*, 329 Mass. 314, 318), concluded that "the Board cannot be said to have acted unreasonably in its denial of the application." This conclusion seems to us amply supported by the judge's findings: (1) the respondent

---

[3] Regulation 1.1 defines "impervious material" as "[s]oils having a percolation rate greater than 30 minutes per inch drop . . . ."

Director of Public Health, who was present when the tests required by the code were made, did not approve the site based on the test results at that time and later "made the Board aware of his observations and opinion as to non-compliance with the Code"; (2) "[t]he evidence and photographs indicate the lots in question to be wet areas"; (3) "[t]aking the lots in their existing condition the provisions of the Code have not been met"; (4) "[r]egulation 14.1(a) . . . makes no mention of averaging"; and (5) "[i]f part of a disposal system is over impervious material one would expect a system failure . . . . These lots in their present state are submarginal." All these findings could be distilled from the evidence.

In sum, the interpretation of pertinent provisions of the code as applied to these lots relied on by the respondents and accepted by the judge was reasonable and there was no error.

*Order for judgment affirmed.*