Kern, J.
This case is a certiorari action under G.L.c. 249, §4 in which the plaintiff, Conservation Law Foundation (“CLF”), seeks to quash and remand the Natick Conservation Commission’s (“Commission”) decision to grant an Order of Conditions to co-defendant B&B Corporation (“B&B”) for proposed development of a subdivision. CLF contends that the Commission’s decision not to apply Natick’s Wetlands bylaw[2] to B&B’s proposed construction work was unlawful. The defendants move jointly for summary judgment on the grounds that the Commission’s decision was well-reasoned and rational, not arbitrary and capricious. CLF cross-moves for judgment on the pleadings under Mass.R.Civ.P. 12(c) on the grounds that the Commission’s decision not to apply the bylaw was unlawful, unreasonable and not supported by substantial evidence.[3]
After a hearing and for the reasons set forth below, defendants’ Motion for Summary Judgment is ALLOWED and plaintiffs Cross Motion for Judgment on the Pleadings is DENIED.

BACKGROUND

The facts, taken from the administrative record filed by the Commission, are as follows.
In 1999, B&B proposed construction of a ten-lot residential subdivision known as “Winter Oaks” ("Project”) on an undeveloped, wooded parcel located off Winter Street in Natick, Massachusetts. The location of the Project contains wetlands including vernal pools[4] and an intermittent stream and bank as defined under the Wetlands Protection Act (“WPA”).[5]
*613 On February 8, 2000, the Natick Planning Board unanimously voted to adopt an amendment to the Town’s wetland protection bylaw (“bylaw amendment”). On April 27, 2000, the bylaw amendment was approved by a majority vote at Town Meeting and was to take effect on August 18, 2000. The bylaw amendment provides more stringent protection of wetland resource areas, including vernal pools, intermittent streams and banks, than does the WPA.[6] The bylaw amendment also contains a grandfather provision that exempts:
[W]ork for which a Notice of Intent has been filed with, or an Order of Conditions has been obtained from, the Commission at the time of the effective date of [the bylaw], but such work has not yet been commenced or completed, so long as such Order of Conditions issued for such work remains valid, unexpired and unmodified;
The initial Notice of Intent filing for construction on an individual lot that is part of the development for which an Order of Conditions has been obtained from the Commission at the time of the effective date of this [bylaw] but has not yet been commenced or completed, so long as the Order of Conditions remains valid, unexpired and unmodified, and provided further that the proposed work is, in the determination of the Commission, consistent with and not an expansion of the previously approved development.
Art. 30, §2.12.
On February 18, 2000, six months before the effective date of the bylaw, B&B submitted a Notice of Intent[7] application (“NOI”) with the Commission for review of the Project under the Wetlands Protection Act.[8] Between March and September of 2000, the Commission held numerous public hearings on the Project. During the public hearing process, concerned neighbors of the Project gathered and submitted information relating to the wetland resource areas located on the property that was not contained in B&B’s NOI. The Commission also conducted two site visits.
On June 15, 2000, B&B sent a letter to the Commission describing certain revisions to the proposed Project aimed at minimizing the impact on all wetland resource areas. At a public hearing on July 13, 2000, the Commission asked B&B to provide additional specific details relating to the proposed Project. The Commission also considered and rejected a proposal to require B&B to file a new NOI for the Project. B&B submitted the requested information at an August 10, 2000 public hearing at which time the Commission again asked B&B for additional information, this time in the form of a “supplemental package.” In addition, the Commission again considered and rejected a proposal to require B&B to file a new NOI.
On September 14, 2000, one week prior to the final public hearing on B&B’s NOI held on September 21, 2000 and after the bylaw amendment became effective, B&B submitted the requested “supplemental package.” The “supplemental package” included a revised WPA Form 3, and advised the Commission of a change in B&B’s proposed construction of a bridge spanning the intermittent stream and its bank.[9] The revised plans also described additional proposals to mitigate the Project’s impact on wetland resource areas discovered during the public hearing process. At the September. 21, 2000 public hearing, the Commission considered and rejected requiring B&B to submit a new NOI for a third time. Apart from B&B’s alteration of its proposed bridge construction method, all other Project revisions and alterations were submitted to the Commission prior to the August 18, 2000 effective date of the bylaw amendment.
On September 26, 2000, after the final public hearing had been held, a neighborhood group notified the Commission of its position that the more stringent amendment to the town’s bylaw was applicable to the Project. On October 11, 2000, the Commission voted to approve an Order of Conditions for the work under the state WPA. On October 25, 2000, the neighbors sought a Superseding Order of Conditions from the Massachusetts Department of Environmental Protection (“DEP”).[10] CLF filed the present action on December 8, 2000.

DISCUSSION

1. Standard of Review
General Law c. 249, §4 provides in part: “[a] civil action in the nature of certiorari to correct errors in proceedings which are not according to the course of the common law, which proceedings are not otherwise reviewable by motion or on appeal, may be brought in the supreme judicial or superior court . . . The court may enter judgment quashing or affirming such proceedings or such other judgment as justice may require.”
Judicial review under G.L.c. 249, §4 is limited to correcting substantial errors of law apparent on the record adversely affecting material rights. Carney v. City of Springfield, 403 Mass. 604, 605 (1995); MacHenry v. Civil Service Comm’n, 40 Mass.App.Ct. 632, 634 review denied, 423 Mass. 1106 (1996). Further, certiorari lies only where the petitioner has exhausted all administrative remedies. Carney, supra, at 605. The standard of review varies according to the nature of the action for which review is sought. Forsyth School for Dental Hygienists v. Board of Registration in Dentistry, 404 Mass. 211, 217 (1989); Police Comm’r of Boston v. Personnel Adm’r, 39 Mass.App.Ct. 360, 362, affd, 423 Mass. 1017 (1995).
Where the action sought to be reviewed is the proper exercise of the Commission’s discretion in the imposition of conditions for the protection of wetlands, an arbitrary and capricious standard should be applied. T.D.J. Dev. Corp. v. Conservation Comm’n of North Andover, 36 Mass.App.Ct. 124, 128 (1994), citing *614 Forsyth School for Dental Hygienists, supra at 217 and n.2. “A decision is not arbitrary and capricious unless there is no ground which reasonable [persons] might deem proper to support it.” Id. at 128, quoting Cotter v. Chelsea, 329 Mass. 314, 318 (1952).
The Commission must also base its “decision on reasoning relevant to the evidence presented before [it],” also known as the “substantial evidence” test. Lovequist v. Conservation Comm’n of Dennis, 379 Mass. 7, 17-18 (1979); Forsyth School for Dental Hygienists, 404 Mass. at 217. “Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion.” New Boston Garden Corp. v. Board of Assessors of Boston, 383 Mass. 456, 466 (1981).
2. Review of Commission Actions
The issue to be decided in this case is whether, as a matter of law, the revisions made to the Project during the public hearing phase, and after B&B filed its initial NOI, mandate the filing of a new NOI that would trigger application of the more stringent bylaw amendment which became effective on August 18, 2000. There is no dispute that if the more restrictive bylaw amendment is applicable to the Project, it cannot proceed as presently proposed.
CLF contends that, under the bylaw amendment, only work described in B&B’s original NOI qualifies for the grandfather provision contained in the bylaw amendment. CLF also argues that B&B’s NOI was defective because it failed to correctly describe proposed work at the site. According to CLF, the additional work B&B proposed after filing its initial NO I required B&B to file another NOI after the effective date of the bylaw amendment. Thus, CLF argues that B&B’s proposed project falls outside the scope of the bylaw amendment’s grandfather provision. CLF further argues that the Commission’s decision to allow B&B to supplement its NOI, thereby avoiding application of the bylaw, was arbitrary, unlawful and not supported by significant evidence because it failed to apply its own “significant change" standard for determining when a new NOI would be required. In support of this argument, CLF cites the standard set forth in the Commission’s Order of Conditions issued for the Project which states that:
Any changes made in the . . . described plans and narrative . . . which alter an Area Subject to Protection under the Wetlands Protection Act, or any changes in activity subject to regulation under [the Act] shall require the applicant to inquire whether the change is significant enough to require the filing of a new Notice of Intent. Any errors in the plans or information submitted by the applicant shall be considered changes and the above procedures shall be followed.
According to CLF, the Commission’s usual practice is to require a new NOI when “significant changes” are made to proposed work in wetland areas. CLF also claims that the “supplemental package” B&B submitted to the Commission on September 14, 2000, constituted a new NOI, thereby rendering the Project outside the scope of the bylaw’s grandfather provision and subject to the bylaw amendment’s more stringent wetland resource area protection.
Defendants contend that they are entitled to judgment under the arbitrary and capricious standard applicable to this court’s review of the Commission’s actions. The defendants argue that the Commission had the discretion to decide whether to require B&B to file a new NOI and that the decision not to require a new NOI was well reasoned and rational. Thus, the Commission’s implicit determination that the Project was not subject to the more stringent bylaw amendment was both rational and consistent with the express grandfather language of the bylaw. The defendants also contend that B&B’s NOI met the minimum regulatory requirements for a valid NOI set forth in Code Mass. Reg. 310, §10.05 and that the revised WPA Form 3 did not constitute a “new” NOI. Thus, under the arbitrary and capricious standard, the defendants seek judgment upholding the Commission’s decision that the Project is exempt from the bylaw amendment under its grandfather provision.
In Citizens for Envtl. Management v. Attleboro Mall, Inc., 400 Mass. 658 (1987), the Supreme Judicial Court addressed the issue of whether a developer was required to file a new NOI where the original one did not completely describe the proposed activity. After an original NOI was filed with the Attleboro Conservation Commission (“ACC”), the DEP[11] subsequently adopted new regulations that prohibited the type of-development proposed in the original NOI. Id. at 661. However, the new regulations contained a grandfather provision for “projects already in the regulatory pipeline.” Id. at 662. The Court stated that “While the [WPA] requires that the notice which triggers local review must include such plans as may be necessary to describe [the] proposed activity and .its effect on the environment, the [WPA] nowhere intimates that all subsequent proceedings under the [WPA] must remain directed to the specific plans initially filed with local authorities.” Id. at 673.
This case involves a question of whether the more stringent wetlands bylaw amendment at issue applies at all in light of the express grandfather provision the amendment contains, not how the bylaw amendment applies to B&B’s project. Accordingly, the court’s analysis will focus on whether “the Commission committed a substantial error of law that resulted in manifest injustice to the [plaintiff].” T.J.D. Dev. Corp., supra, at 128. In the present case, B&B was not required to file a new NOI either before or after the August 18, 2000 effective date of the bylaw amendment. CLF’s contention that the Commission ignored its “substantial change” standard in deciding not to require B&B to *615 file a new NOI is misplaced. CLF contends that the “substantial change” standard as set forth in the Order of Conditions which the Commission ultimately issued for the Project on October 11, 2000, after the public hearing phase of the Project had closed required a new NOI. That standard should not be applied retroactively to B&B’s NOI which was filed approximately eight months earlier on February 18, 2000.
In addition, all of the alterations and revisions, with the exception of a change in proposed construction method reducing the impact on the site’s wetland resource areas, were made while the public hearing phase was open, and thus, received public scrutiny and comment. This includes alterations and revisions contained in B&B’s “supplemental package” which the Commission received on September 14, 2000, and which was subject to public comment at the final public hearing held on September 21, 2000.

CONCLUSION

Under Citizens for Envtl. Management, supra, even substantial changes to proposed plans set forth in a NOI do not require an applicant to seek de novo review of a proposed project under the WPA. Moreover, the express language of the bylaw amendment exempts ”[w]ork for which a Notice of Intent has been filed with . . . the Commission at the time of the effective date of [the bylaw]." It is undisputed that B&B filed its NOI on February 18, 2000 — six months before the bylaw amendment became effective. The court also finds that B&B’s NOI met the minimum requirements set forth under Code Mass. Reg. 310, §10.05 and that the “supplemental package” B&B submitted to the Commission did not constitute a new NOI. Thus, the Commission’s decision not to require B&B to file a new NOI was lawful.

ORDER

For the foregoing reasons, defendants’ Motion for Summary Judgment is hereby ALLOWED and plaintiff s Cross Motion for Judgment on the Pleadings is hereby DENIED. The decision of the Natick Conservation Commission granting B&B’s Order of Conditions is hereby AFFIRMED.

 Article 30, §2, as amended, effective August 18, 2000.

 Plaintiff argues that the court should decide this case on the basis of motions for judgment on the pleadings. While Superior Court Standing Order 1-96 does not state the procedural mechanism by which a defendant may dispose of a certiorari action brought under G.L.c. 249, §4, the Supreme Judicial Court has reviewed such cases where the Superior Court decided the dispute on cross motions for summary judgment. See. T.J.D. Dev. Corp. v. Conservation Comm’n North Andover, 36 Mass.App.Ct. 124, 128-29 (1994). In this case, the court will decide both defendants’ Motion for Summary Judgment and plaintiffs Cross Motion for Judgment on the Pleadings, but will limit its judicial review to correcting “substantial errors of law that affect material rights” in the administrative record in accordance with G.L.c. 249, §4. See Gloucester v. Civil Service Comm’n, 408 Mass. 292, 297 (1990), quoting Debnam v. Belmont. 388 Mass. 632, 635 (1983).

 Massachusetts Department of Environmental Protection regulations promulgated under the Massachusetts Wetlands Protection Act, G.L.c. 131, §40, define vernal pools as “essential breeding sites for certain amphibians which require isolated areas that are generally flooded for at least two continuous months in the spring and/or summer and are free from fish predators. Most of these amphibians remain near the breeding pool during the remainder of their lifecycle.” Code Mass. Regs. 310, §§10.57(b)(4), 10.04.

 General Law c. 131, §40.

 The WPA “establishes minimum Statewide standards leaving local communities free to adopt more stringent controls.” T.J.D. Dev. Corp., supra, quoting Golden v. Selectmen of Falmouth, 358 Mass. 519, 526 (1970).

 B&B’s NOI was submitted using WPA Form 3 — Notice of Intent.

 B&B sought review solely under the WPA because the more restrictive amendment to the Natick Wetlands Protection Bylaw, approved on February 8, 2000, did not become effective until August 18, 2000.

 The proposed construction change called for the use of “jacking” utilities to reduce the impact on the stream and bank habitats located on the Project site.

 This appeal is presently pending.

 The more restrictive regulations at issue were adopted by the Department of Environmental Quality and Engineering or “DEQE,” known presently as the Department of Environmental Protection or “DEP.”