Curran, Dennis J., J.
Net Technologies, Inc. has sued to force the Massachusetts Department of Transportation to award it a public works project for which Net Tech submitted the lowest contract bid. After approving Net Tech as a prequalified bidder, MassDOT rejected Net Tech’s bid because it determined that the prequalification had been in error because Net Tech lacked the requisite master electrician’s license. Mass-DOT is entitled to set and enforce qualification requirements for public works projects under its supervision, under G.L.c. 81, §8B and G.L.c. 30A, §39M. There is no evidence of “illegal or arbitrary action” in its manner of doing so in this case. Capuano, Inc. v. School Building Comm. of Wilbraham, 330 Mass. 494, 496 (1953). Therefore, MassDOT is entitled to summary judgment.[2]
BACKGROUND
On December 26, 2012, MassDOT issued a series of definitions setting out the nature of several categories of public works projects, and a non-exhaustive list of prequalification requirements for contractors seeking to bid on those projects. On February 5, 2013, Net Tech applied for prequalification as a contractor in the Intelligent Transport Systems category. MassDOT’s definitions state that to be prequalified for ITS work, an applicant must possess a current Massachusetts master electrician’s license; in the case of corporations, the license must be held by a board member. This requirement was recommended by the ITS programs unit of MassDOT’s prequalification committee. Net Tech does not, and did not at the time of its application, possess a master electrician’s license. Nonetheless, on February 20, 2013, MassDOT approved Net Tech’s application and issued it a pre-qualification certificate for ITS bidding.
On March 9, 2013, MassDOT notified potential contractors of an ITS project involving repairs to Mass-DOT communication and control systems. Only two contractors submitted bids: Net Tech and Coviello Electric & General Contracting Co., Inc. The next month, on April 13, MassDOT issued bid results showing that NetTech’s bid was about $175,000 lower than Coviello’s. Another month later, on May 15, MassDOT issued revised bid results showing that Net Tech’s bid had been rejected. MassDOT also sent Net Tech a follow-up email explaining that because Net Tech lacked a master electrician’s license, it should not have been prequalified in the first place, and therefore its prequalification would be rescinded until it met the license requirement.
On May 17, Net Tech sent a letter to MassDOT stating, “At all relevant times, Net Tech has had an employee on its payroll holding a Master Electrician’s license.” On June 4, MassDOT issued a third set of bid results, showing that Net Tech’s bid was the lowest. On June 7, a third party filed a protest with the Bid Unit of the Attorney General’s Office. On July 18, the Bid Unit issued a decision finding that Net Tech was not a qualified bidder at the time it submitted its bid. In accordance with that decision, MassDOT issued a fourth set of bid results on July 19 indicating that Net Tech’s bid was once again rejected.[3]
DISCUSSION
The moving party bears the burden to show that there is “no genuine issue of material fact and that [it] is entitled to judgment as a matter of law.” Madsen v. Erwin, 395 Mass. 715, 719 (1985). It may meet this burden “either through affirmative evidence or by showing an absence of evidence to support an essential element of the nonmoving party’s claim.” Dennis *345 v. Kaskel, 79 Mass.App.Ct. 736, 741 (2011), citing Flesner v. Technical Communications Corp., 410 Mass. 805 (1991). In considering this motion, the court must view the facts, and the inferences that can reasonably be drawn from them, in the light most favorable to the nonmoving party. Coveney v. President & Trustees of the College of the Holy Cross, 388 Mass. 16, 17 (1983).
It is undisputed that Net Tech never possessed a master electrician’s license at any time relevant to this case. Accordingly, the parties’ motions for summary judgment present two narrow issues of law: first, whether MassDOT properly promulgated the license requirement; and second, whether even if the requirement was properly promulgated, its enforcement here was arbitrary and capricious.
General Laws c. 81, §8B provides that contractors seeking prequalification must “submit a statement. . . setting forth the [contractor’s] qualifications to perform such work,” which “statement shall be in such detail... as [MassDOT] may prescribe . . . subject to the requirements of chapter 30A.” In addition, G.L.c. 30, §39M(a) and (c) provide that contracts for public works “shall be awarded to the lowest responsible and eligible bidder,” defined as the bidder “whose bid is the lowest of those bidders possessing the skill, ability and integrity necessary for the faithful performance of the work.”
The word “qualifications” in §8B is a statutory term that must be defined and interpreted in the case of each category of public works projects. So too are the words “skill” and “ability” in §39M. “[F]ormal rulemaking is not required when an agency seeks to interpret a statute.” Boston Ret. Bd. v. Contributory Ret. Appeal Bd., 441 Mass. 78, 83 (2004). In other words, MassDOT was entitled to determine the qualifications necessary for a contractor to bid on ITS projects, such as the one at issue in this case, without promulgating formal rules in each case. Likewise, it was entitled to determine that the possession of a master electrician’s license was an element of the “skill [or] ability” necessary to complete ITS projects. Accordingly, whether considered at the pre-qualification or post-bid stage, MassDOT acted within its statutory authority when it rejected Net Tech’s bid because it lacked a master electrician’s license.
Apart from this authority is the question of whether the license requirement itself is arbitrary, either on its face or as applied to Net Tech. See Capuano, Inc., 330 Mass. 496. In evaluating the actions of an administrative agency, courts “must apply all rational presumptions in favor of the validity of the administrative action . . .” Consol. Cigar Corp. v. Dep’t of Pub. Health, 372 Mass. 844, 855 (1977). “This deference is necessary to maintain the separation between the powers of the legislature and administrative agencies and the powers of the judiciary.” Borden, Inc. v. Comm’r of Pub. Health, 388 Mass. 707, 723 (1983). Thus, an agency action “is not arbitrary . . . unless there is no ground which ‘reasonable men might deem proper’ to support it.” T.D.J. Dev. Corp. v. Conservation Comm’n, 36 Mass.App.Ct. 124, 128 (1994), quoting Cotter v. Chelsea, 329 Mass. 314, 318 (1952).
In this case, the summary judgment record indicates that the license requirement was recommended by MassDOT’s ITS programs unit, due to concerns about wiring being performed properly and meeting electrical code requirements, and that MassDOT relied on the expertise of that unit in accepting the recommendation. Net Tech contends that MassDOT’s adoption of the license requirement was arbitrary because there is no evidence that it inquired into the ITS programs unit’s reason for recommending the license requirement. This argument misses the mark: it was not unreasonable for MassDOT to task a specific, expert subcommittee—in this case, the ITS group— with the work of researching, discussing, and drafting prequalification requirements, nor to rely upon that group’s expertise and adopt its recommended requirements. ITS projects involve some form of electrical work; a master electrician’s license indicates a potential contractor’s level of skill or ability in performing such work. This is a “ground which reasonable men might deem proper” for requiring a potential ITS contractor, such as Net Tech, to hold a master electrician’s license. Cotter v. Chelsea, 329 Mass. 314, 318 (1952) (courts “should be slow to decide that a public board has acted unreasonably or arbitrarily” and “should cast about to discover” a reasonable ground for the action). Accordingly, the license requirement is not arbitrary on its face.
As to the specific application in Net Tech’s case, it is settled law that when a bid for a public works proj ect “deviat[es] not from a statutory requisite!,] but rather from a requirement imposed by the [agency] . . . the [agency] has discretion to accept or reject the bid.” Peabody Constr. Co. v. Boston, 28 Mass.App.Ct. 100, 104 (1989). MassDOT acted within its discretion in rejecting Net Tech’s bid for failure to comply with a non-statutory requirement imposed by the agency, specifically, the requirement of holding a master electrician’s license. Net Tech has adduced no evidence of bias, illegality, improper motive, or any other wrongful conduct in MassDOT’s decision to do so. That Net Tech is severely disappointed with MassDOT’s refusal to exercise its discretion in its favor does not, without more, render that refusal arbitrary.[4]
CONCLUSION AND ORDER
MassDOT’s prequalification requirement of a master electrician’s license was properly promulgated and enforced under §8B and §39M, and is sufficiently related to the successful completion of ITS projects so as to be neither arbitrary nor capricious. Therefore, MassDOT’s motion for summary judgment must ALLOWED and Net Tech’s cross motion for summary judgment, DENIED.

 Accordingly, MassDOT’s motion to strike certain of plaintiffs additional facts is moot.

 The Bid Unit’s decision “carries no weight in the eviden-tiaiy sense.” Annese Elec. Svc. v. City of Newton, 431 Mass. 763, 771 (2000). It is noted here only because it is the apparent and undisputed reason for MassDOT issuing the fourth set of bid results.

 To the extent that Net Tech argues that MassDOT exercised its discretion by initially listing Net Tech as the lowest bidder, thus indicating it had waived the license requirement, the court notes only that the summary judgment record contains uncontested evidence that MassDOT’s initial approval was the result of an “oversight, ” rather than an exercise of its discretion. Ex 2, “Exhibit I” (May 15, 2013 letter from MassDOT to NetTech). Most curiously, however, the oversight was discovered as a result of an inquiry from a group affiliated with the electrician's union—indeed, not the disappointed bidder Coviello, which, to the Court’s admittedly limited view into this process, has no fingerprints on the challenge to Net Technologies’ bid. Thus, Net Tech’s argument that the union improperly ”pressure[d]” MassDOT to change an otherwise purposeful decision must, unfortunately, given the record presented to the Court, be seen as speculative, but certainly, in this Court’s practical view, suspicious. Ex 11, p. 25; Plaintiffs Memorandum, p. 20.