## FORSYTH SCHOOL FOR DENTAL HYGIENISTS *vs.* BOARD OF REGISTRATION IN DENTISTRY.

Suffolk. November 9, 1988. — March 2, 1989.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Dental Hygienist. Due Process of Law*, Regulation of economic activity. *Constitutional Law*, Police power, Freedom of speech and press. *State Administrative Procedure Act. Administrative Law*, Adjudicatory proceeding, Hearing, Judicial review. *Practice, Civil*, Relief in the nature of certiorari.

A school for the training of dental hygienists, seeking permission under G. L. c. 112, § 51, from the Board of Registration in Dentistry to include a certain course in its curriculum, was not entitled to a full adjudicatory hearing pursuant to §§ 1, 10, & 11 of G. L. c. 30A, the State Administrative Procedure Act, since the school's request did not implicate its right to engage in its lawful occupation [214-215], and since any resulting restriction on the school's exercise of free-speech rights was merely incidental to the board's permissible regulation of the school's activities [215-217]. NOLAN, J., with whom LIACOS and LYNCH, JJ., joined, dissenting.

In an action in the nature of certiorari, seeking judicial review of a decision by the Board of Registration in Dentistry under G. L. c. 112, § 51, denying a school's request for permission to include a certain course in its curriculum for dental hygienists, review was limited to a determination whether the board had acted arbitrarily and capriciously. [217]

In an action for judicial review of a decision by the Board of Registration in Dentistry under G. L. c. 112, § 51, denying a school's request for permission to include a certain course in its curriculum for dental hygienists, the school did not meet its burden of demonstrating that the board had acted arbitrarily and capriciously, or based its decision on a legally untenable ground. [217-219]

CIVIL ACTION commenced in the Superior Court Department on July 6, 1984.

The case was heard by *James F. McHugh*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Ronald F. Kehoe* (*Ronald R. Cloutier & Antoinette D. Hubbard* with him) for the plaintiff.

*Alice E. Moore*, Assistant Attorney General, for the defendant.

ABRAMS, J. The plaintiff, Forsyth School for Dental Hygienists (school), appeals from a judgment of a Superior Court judge dismissing its complaint against the Board of Registration in Dentistry (board). The school petitioned the board pursuant to G. L. c. 112, § 51 (1986 ed.), for permission to include in its curriculum a practical course on the administration of local anesthesia and nitrous oxide analgesia. The board denied the school's petition. The school then sought, and was denied, relief in the Superior Court. The school appealed and we transferred the case to this court on our own motion. We affirm.

The school is a private institution located in Boston, offering a two-year, post-high school course of study in dental hygiene. The school attracts students from many States and foreign countries, and its graduates seek employment throughout the country.

In May, 1984, the school petitioned the board for permission to teach a didactic and clinical course on the administration of local anesthesia and nitrous oxide analgesia. Such permission is necessary because, under G. L. c. 112, § 51, and the board's regulations adopted thereunder, a dentist may not delegate either of these procedures to a dental hygienist. See 234 Code Mass. Regs. § 2.04 (c) (1986). The school petitioned the board pursuant to G. L. c. 112, § 51, fourth par., however, which provides that a school may petition for permission to teach such nondelegable duties.

With its petition, the school submitted a lengthy affidavit from Dr. Ralph R. Lobene, its dean and chief academic administrator. Dr. Lobene's affidavit described the proposed course of study and emphasized the measures that would assure the safety of the fellow students and clinical patients on whom the students would practice. Dr. Lobene also pointed out that the school had had a similar program from 1972 through 1974. In that program, there were a total of 19,849 anesthetizations

by dental hygienists, with "not a single serious adverse effect on any patient participating."

Dr. Lobene's affidavit also set forth the reasons for seeking permission to teach such a course. According to Lobene's affidavit, California now requires that all dental hygienists be trained in the administration of local anesthesia and of nitrous oxide analgesia before they can qualify to sit for the registration examination in that State. The school felt itself ethically bound to pay for postgraduate courses for those students who wished to practice in California and had been unable to get the necessary training at the school. Dr. Lobene stated that twenty-four schools in thirteen States now offer courses in local anesthesia and nitrous oxide analgesia, despite the fact that in those States, as in Massachusetts, those tasks cannot be delegated to dental hygienists. Moreover, at least fifteen other States do permit the delegation of these functions. The school's motive in petitioning the board, thus, was to retain its competitiveness and its standing in its field.

The board met in June, 1984, to consider the school's petition. Before it were the affidavit of Dr. Lobene and an affidavit from Dr. Roland J. Miller, who would teach the proposed course. Dr. Stanley Cohen, president-elect of the Massachusetts Dental Society, and the legal counsel to the society, spoke in opposition to the petition. Dr. Cohen testified to the dangers of local anesthesia, which include toxic or allergic reaction, fainting, infection, prolonged anesthesia and clotting; and of nitrous oxide analgesia, which is severe hypoxia, or inadequate oxygenation, resulting in loss of consciousness. Some of these complications can have irreversible effects, including death, if they are not treated on an emergency basis. The board voted the same day to deny the petition. The board did not detail its reasons for refusing permission, until after the school instituted this action.

In its complaint in the Superior Court, and on appeal, the school asserts that the board failed to accord it the adjudicatory proceeding to which it claims it was entitled under G. L. c. 30A, §§ 1 and 11, and that it is entitled to review under the standards of G. L. c. 30A, § 14. The school argues in the

alternative that it is entitled to review under G. L. c. 249, § 4, and that the matter should be remanded to the board for a statement of reasons that would permit a reviewing court to ascertain whether the board's action was arbitrary or capricious.

1. *The applicability of G. L. c. 30A.* The school claims that the board's hearing, after which its petition was denied, was an "adjudicatory" proceeding. "Adjudicatory proceeding" is defined in G. L. c. 30A, § 1, as "a proceeding before an agency in which the legal rights, duties or privileges of specifically named persons are required by constitutional right or by any provision of the General Laws to be determined after opportunity for an agency hearing." If the proceeding is "adjudicatory," then it must comply with §§ 10 and 11. Further, such a proceeding would be reviewable under § 14. The Superior Court judge found, and the board does not dispute, that the board is an "agency" within the meaning of G. L. c. 30A, § 1. The school, of course, is a "specifically named person." The remaining question, thus, is whether the school has a constitutional or statutory right to have the board act on its petition only after an adjudicatory proceeding. The school asserts that both its right to engage in a lawful occupation and its right to freedom of speech are at stake, and that these constitutional rights require the protection of due process (i.e., an adjudicatory proceeding).

If the school has a "property" right in a favorable board decision, and is "entitled" to favorable action on its petition, it can claim a right to a hearing under the due process provisions of the Fourteenth Amendment to the United States Constitution, under arts. 10, 11, and 12 of the Declaration of Rights of the Constitution of the Commonwealth, and under G. L. c. 30A, §§ 1, 10, and 11. "[T]he right to engage in any lawful occupation is an aspect of the liberty and property interests protected by the substantive reach of the due process clause of the Fourteenth Amendment to the United States Constitution and analogous provisions of our State Constitution." *Blue Hills Cemetery, Inc.* v. *Board of Registration in Embalming & Funeral Directing*, 379 Mass. 368, 372 (1979).

The school's right to engage in a lawful calling, however, is not equivalent to a right to practice its calling free from State regulation. The State may regulate otherwise lawful occupations as long as the regulations have "a rational tendency to promote the safety, health, morals, and general welfare of the public." *Milligan* v. *Board of Registration in Pharmacy*, 348 Mass. 491, 498 (1965), *S.C.*, 350 Mass. 246 (1966), quoting *Opinion of the Justices*, 322 Mass. 755, 760 (1948). See *Blue Hills Cemetery, Inc., supra*. General Laws c. 112, § 51, under which the board acted in the present case, enumerates the tasks that a dentist may delegate to a dental hygienist, and provides that an educational institution may apply to the board for permission to teach procedures that may not be delegated to hygienists under § 51. The regulations clearly have a rational relation to the promotion of safety and health, and the school does not challenge their general validity. Because the school was asking in effect for an exemption from the prohibition contained in G. L. c. 112, § 51, it could claim no entitlement. Therefore, the Superior Court judge correctly concluded that the board was not obliged to give the school a full adjudicatory hearing.

The two cases which the school cites in support of its claims for a hearing are distinguishable. In those two cases, applicants for professional licenses established the right to a fair administrative hearing with reasonable procedures and opportunity for judicial review because their right to practice their lawful occupation was in question. In *Milligan, supra*, a licensed pharmacologist was denied a permit to open a pharmacy at the location of his choice. In *Marmer* v. *Board of Registration of Chiropractors*, 358 Mass. 13 (1970), the applicant was denied a chiropractor's license after an allegedly unfair examination. At stake in each case was the "applicant's opportunity to engage at all in a particular occupation." *Milligan, supra* at 496. In this case, the school will continue to operate as a school under the same regulations as all other such schools in the State. Thus, it has not been denied its right to engage in its occupation.

The school also argues that its right of free speech is implicated in the board's action and that this constitutional right

triggers its right to a hearing and review under G. L. c. 30A. It is hardly tenable, however, that the board's action violated the school's free speech rights. The appropriate standard is the one enunciated in *United States* v. *O'Brien*, 391 U.S. 367 (1968). In *O'Brien*, the Supreme Court stated that, where governmental regulation has an adverse effect on conduct consisting of both speech and nonspeech, the regulation "is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction cn alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *Id.* at 377. The regulation embodied in G. L. c. 112, § 51, and the board's action pursuant thereto in denying the school's petition, easily pass muster under *O'Brien*. If the school wished to teach a purely "didactic" course on anesthesia, permission from the board would not be required.[1]

Neither a right to practice a lawful occupation nor a right to free speech is implicated in the board's decision. The school has not advanced any other putative "rights, duties or privileges" that are "required . . . to be determined after opportunity for an agency hearing." We conclude, therefore, that the proceeding was not "adjudicatory" and the rules set out in

---

[1] The dissent would grant the school standing to raise the students' right to train for a lawful occupation. Neither in the Superior Court nor on appeal has the school asserted or argued the students' right to train for a lawful occupation. Assuming for the sake of argument that the school should be permitted to raise the students' constitutional rights, the school has not done so. Further, in this case, there is no reason to grant the school standing to raise the rights of students to engage in a lawful occupation because that issue has not been raised. *Craig* v. *Boren*, 429 U.S. 190 (1976), does not aid the dissenters. That case stands for the proposition that, if two plaintiffs raise an identical constitutional issue challenging a statute, and the constitutional issue becomes moot as to one of the plaintiffs, the other plaintiff may continue the challenge. *Id.* at 192-197. The students' right to train for a lawful occupation is no greater than the school's right to provide training for a lawful occupation. Such rights are subject to reasonable regulation in the public interest. The dissent has advanced no reason why we should depart from this principle.

c. 30A both for the proceeding itself and for judicial review of the proceeding do not apply.

2. *Review in the nature of certiorari.* The school obtained review under G. L. c. 249, § 4, which provides for review in the nature of certiorari for proceedings not otherwise reviewable. Under G. L. c. 249, § 4, the standard of review may vary according to the nature of the action for which review is sought. See *Boston Edison Co. v. Boston Redevelopment Auth.*, 374 Mass. 37, 48-49 (1977); *McSweeney* v. *Town Manager of Lexington*, 379 Mass. 794, 800 (1980). In the present case, the Superior Court judge correctly applied the "arbitrary and capricious" standard of review. Because the board is free to use its judgment in determining when and to whom to grant exemptions from its regulations, such decisions can be considered the exercise of the board's administrative discretion. An appeal under G. L. c. 249, § 4, through an action in the nature of certiorari, is not generally available to review discretionary administrative action except to determine whether the board acted arbitrarily and capriciously. See, e.g., *Emerson College* v. *Boston*, 391 Mass. 415, 422 n.14 (1984); *School Comm. of Hatfield* v. *Board of Educ.*, 372 Mass. 513, 517 (1977); *First Church of Christ, Scientist* v. *Alcoholic Beverages Control Comm'n*, 349 Mass. 273, 275 (1965); *Yerardi's Moody St. Restaurant & Lounge, Inc.* v. *Selectmen of Randolph*, 19 Mass. App. Ct. 296 (1985).[2] Under the "arbitrary and capri-

---

[2] The instant case is easily distinguishable from *Saxon Coffee Shop, Inc.* v. *Boston Licensing Bd.*, 380 Mass. 919 (1980), in which we held that the revocation of a common victualler's license was to be reviewed under the substantial evidence test. In that case, we analogized to the standard applicable to revocation of a liquor license. Although the board in *Saxon*, unlike the Alcoholic Beverages Control Commission, is not a State agency within the meaning of G. L. c. 30A, § 1, we held the board to the substantial evidence test as though G. L. c. 30A, § 14 (7) (*e*), applied. We reasoned that "[r]evocation proceedings in both instances are required by statute, and are adjudicatory in nature. . . . The 'nature of the claim' is virtually identical on appeal." *Saxon Coffee Shop, Inc., supra* at 924. The proceeding of the board in the instant case is not adjudicatory, see *supra* at 214-215, and does not implicate the right to engage in a lawful occupation. Thus, it is more analogous to the cases in which an exception is sought to zoning by-laws. Those cases apply the "arbitrary and capricious" standard of review. See

cious" standard the burden is on the plaintiff to show that the challenged action is not related to the protection of public safety, health, morals, and the like. The school has not met its burden.

The judge analyzed the school's application as follows. "First, [the school's] application does not detail, describe or otherwise focus upon the program it proposes to teach with respect to administration of nitrous oxide gas. Second, there are dangers attendant on administration of local anesthesia, dangers recognized both by the Board and by [the school] itself. Third, under [the school's] proposal, injections of local anesthesia are to be made to fellow students and to patients by students who are approximately one and one-half years out of high school. Although [the school] proposes to employ safeguards designed to prevent harm as a result of the administration of the anesthesia under the circumstances just described, and although [the school's] track-record for safety is impressive, this Court cannot say that it was irrational for the Board to conclude that such a program would not be in the 'public interest.' "

We agree with that analysis. The test is not whether we would reach the same result as the board. Rather, "[t]he decision of the board can be disturbed only if it is based on 'a legally untenable ground' . . . or is 'unreasonable, whimsical, capricious, or arbitrary' . . . ." (citations omitted). *Gulf Oil Corp.* v. *Board of Appeals of Framingham*, 355 Mass. 275, 277 (1969). See *Zaltman* v. *Board of Appeals of Stoneham*, 357 Mass. 482, 484-485 (1970). The board had before it, in its deliberations, the application from the school with Dr. Lobene's and Dr. Miller's affidavits, as well as the unsworn testimony of Dr. Cohen. In its letter explaining its disallowance of the school's petition, the board cites its "concern . . . that the granting of this petition would not be in the best interest of the public." The letter lists fifteen possible complications

*Zaltman* v. *Board of Appeals of Stoneham*, 357 Mass. 482, 484-485 (1970); *Gulf Oil Corp.* v. *Board of Appeals of Framingham*, 355 Mass. 275, 277 (1969).

or other reasons militating against the teaching of local anes-
thesia and twenty-two against nitrous oxide analgesia. The
letter lists ten technical works to which the board referred and
also noted its reliance on Dr. Cohen's testimony.[3]

We do not agree with the school that the unsworn testimony
of Dr. Cohen or the technical works to which the board referred
on its own initiative were an improper basis for decision. It is
sufficient in these circumstances that a professional board base
its decisions on written information, testimony, or general
knowledge on which a reasonable person would rely. The
record does not support a claim that the action of the board is
either based on a legally untenable ground or is unreasonable,
arbitrary, or capricious.

*Judgment affirmed.*


NOLAN, J. (dissenting, with whom Liacos and Lynch, JJ.,
join). The court decides today that G. L. c. 30A does not apply
to the board's actions. I disagree. While only an "adjudicatory
proceeding" triggers requirements of c. 30A, the statute defines
an adjudicatory proceeding as one "before an agency in which
the legal rights, duties or privileges of specifically named per-
sons are *required by constitutional right or by any provision
of the General Laws to be determined after opportunity for an
agency hearing*" (emphasis added). G. L. c. 30A, § 1 (1)
(1986 ed.). Since G. L. c. 112, § 51, by itself confers no right
to a hearing, "[i]t thus must be decided whether, in any event,
'an opportunity for an agency hearing' upon such an application
is 'required by constitutional right' within the meaning of
c. 30A, § 1 (1)." *Milligan* v. *Board of Registration in Phar-
macy*, 348 Mass. 491, 495 (1965).

---

[3] The board did not write this letter until some four months after rendering
its decision, and after the school had filed the present action. The better
practice is for the board to submit its reasons in writing contemporaneously
with its decision. However, the board's delay in this case was not fatal, as
the letter it finally sent is sufficiently clear to show adequate reasons for
the decision and to pass review under the "arbitrary and capricious" standard.
Compare *Yerardi's Moody St. Restaurant & Lounge, Inc., supra* at 301.

This court recognized in both *Milligan, supra,* and *Marmer v. Board of Registration of Chiropractors,* 358 Mass. 13, 16-17 (1970), that administrative decisions affecting lawful occupations directly touch individuals' economic and property rights as well as personal rights. Here, the board's actions not only bear on the right to practice an occupation by impeding the ability to train, but also affect Forsyth's economic interests in maintaining a nationally competitive program. Accordingly, "fundamental considerations of fairness require such decisions . . . to be made objectively, under reasonable procedures, and with appropriate opportunity for judicial review." *Milligan, supra.*[1]

General Laws c. 30A, § 11, sets forth requirements for adjudicatory hearings. The record reflects that the board ignored many of these requirements during the hearing on Forsyth's petition. No testimony was recorded, no opportunity to respond to adverse witnesses was provided, and no written statement of reasons was given at the time the board denied Forsyth's petition.

Because it is apparent that Forsyth was entitled to, but was denied, the protection afforded by c. 30A, I believe the case should be remanded to the board for a hearing in compliance with G. L. c. 30A, § 11. Accordingly, I dissent.

---

[1] I believe that Forsyth has standing to assert these claims. In *Craig v. Boren,* 429 U.S. 190, 195 (1976), the United States Supreme Court determined that a party has standing "to assert those concomitant rights of third parties that would be 'diluted or adversely affected' should . . . [the] constitutional challenge fail."