Chin, J.
INTRODUCTION
Plaintiffs Martha and Christopher Popoloski filed the present action seeking judicial review of the Duxbury Board of Health’s refusal to grant them a permit to construct a mounded septic system. For the reasons discussed below, the decision of the Board is AFFIRMED.
BACKGROUND
Plaintiffs Martha and Christopher Popoloski (the Popoloskis) own land located on the corner of Congress and Franklin Streets in Duxbury, Massachusetts and reside thereon in a single-family home with an address of 528 Congress Street. The Popoloskis divided their property through the Approval Not Required (ANR) process of the Duxbury Planning Board into two lots:
Lot IB, consisting of 40,567 square feet and containing their existing dwelling, and a second lot shown as Lot 1A, Franklin Street, Parcel No. 070-003 -004, on a plan dated February 25, 1996 and endorsed by the Planning Board under G.L.c. 41, §8IP on April 8, 1996 (Lot 1A). The plan for Lot 1A states, “Lot 1A is unbuildable by itself and is to be combined with adjacent land.” Lot 1A contains 40,314 square feet of land, of which only 29,080 square feet is upland. At the time Lot 1A was created, Duxbury Board of Health Regulations permitted the use of mounded septic systems for new construction.
*614 Adjacent to Lot 1A is a parcel of land owned by Lawrence and Carol Friedman as Trustees of the L&C Realty Trust, shown as Lot 9A, Congress Street, Parcel No. 070-603-000 on a plan dated October 17, 1995 and endorsed by the Duxbury Planning Board on October 23, 1995 (Lot 9A). The plan for Lot 9A states, “Lot 9A is unbuildable by itself and is to be combined with land of Popolowski [sic] adjacent.” The Popoloskis intended to purchase Lot 9A and combine it with Lot 1A in order to have enough land to make a buildable lot.
In May of 1996, the Popoloskis sought approval from the Duxbury Board of Health to make repairs to the septic system which serviced their home on Lot IB. However, due to the division of their land into two lots, variances from the setback requirements of sections 1.04(3)(b) and 1.04(5) of the Board of Health Regulations were required. Duxbury Conservation Administrator Joe Grady recommended against allowing the variances on the ground that, “Before the lot division it appears that sufficient area existed in the southeast portion of the original lot to construct a septic system that would meet your wetland setback requirement. The setback problem is a result of the land division and is a self-inflicted hardship.” However, the Board of Health granted the requested variances on May 16, 1996.
In June of 1996, the Board of Health amended its regulations to prohibit the use of mounded septic systems for new construction. General Laws Chapter 111, section 127P provides in relevant part:
Whenever a person has submitted ... a plan referred to in section eighty-one P of chapter forty-one, the land shown on such plan shall be governed by provisions of the state environmental code, or of the provisions of local board of health regulations which differ from said code, which are in effect at the time of first submission of said plan ... if it is found such approval under the subdivision control law is not required, such provisions shall apply for a period of three years from . . . the endorsement that approval under the subdivision control law is not required. G.L.c. Ill, §127P (1981).
Pursuant to this statute, Lot 9A was grandfathered from the prohibition on mounded septic systems until October 23, 1998, while Lot 1A was grandfathered until April 8, 1999.
On September 24, 1997, the Popoloskis signed a Purchase and Sale Agreement with the Friedmans to acquire Lot 9A for $20,000. The Agreement was contingent on the Popoloskis’ ability to build a single family home on combined Lots 1A and 9A. On December 3, 1997, the Popoloskis applied for a Disposal System Construction Permit to build a mounded septic system on Lot 1A. On December 10, the Board of Health noted on the Popoloskis’ application that the wetlands line was never approved by the Conservation Commission and that the lot might not have the required 40,000 square feet of upland to be a buildable lot. On December 16, Director of Inspectional Services Richard MacDonald (MacDonald) declared Lot 1A un-buildable because it lacked 40,000 square feet of contiguous upland. By letter dated December 17, the Board of Health notified the Popoloskis that because the lot was not buildable, the Board would not review the septic application and plans submitted. The Board did not refund the Popoloskis’ $125 application fee. A memo from Health Agent Jennifer Joyal (Joyal) to MacDonald stated that “the Board of Health will review an Application For Disposal System Construction Permit once Lot 1A and 9A are joined and endorsed by the Planning Board.”
Thereafter, on February 11, 1999, the Popoloskis submitted a Request for Determination of Applicability of G.L.c. 131, §40 to the Duxbury Conservation Commission to obtain a determination with respect to the wetlands delineation. The Popoloskis’ request stated that it related to lot numbers 070-003-004, Lot 1A, and a portion of 070-603-000, Lot 9A. On March 23, 1999, the Conservation Commission approved the wetlands line which had been flagged by the Conservation Agent. The following day, the Popoloskis’ counsel sent a fax to MacDonald stating, “Re: Tract of land consisting of Lot 1A (Lot No. 070-003-004) and Lot 9A (Portion of Lot No. 070-603-000). . . Please forward to the Board of Health ASAP a Memo stating that this tract complies with the 40,000 contiguous upland requirement in the protective by-law (Provided that both lots are placed in common ownership and provided that the tract is the subject of an ANR plan showing the two lots as one, which conditions can then be incorporated into any disposal works construction permit issued).”
On March 30, 1999, the Popoloskis again applied for a Disposal System Construction Permit to construct a mounded septic system on Lot 1A. The Board of Health Information Request stated that the lot was buildable “subject to ANR plan joining lots.” By letter dated May 5, 1999, Joyal informed the Popoloskis that the Board of Health was only required to act on “completed applications” and that their application was not complete because the plan submitted for Lot 1A did not show a buildable lot. Again, the Board did not refund the Popoloskis’ application fee. Counsel for the Popoloskis then wrote to Joyal stating that their application concerned the locus consisting of Lot 1A plus Lot 9A which combined, contained 40,000 square feet of contiguous upland.
On May 7, 1999, the Popoloskis requested to be placed on the agenda of the next Board of Health meeting. By letter dated May 10, 1999, MacDonald informed them that they should submit a written request to be placed on the upcoming Board of Health agenda. He also reiterated that Lot 1A and Lot 9A must be combined to create a buildable lot. The Popoloskis appeared at the July 15, 1999 Board of Health meet- *615 tag, but the Board stood by its denial of a Disposal System Construction Permit.
Thus, the Popoloskis filed the present action on September 10, 1999 seeking a declaratory judgment pursuant to G.L.c. 231A against the Board of Health in Counts I and III, and review in the nature of certiorari of the Board’s decision pursuant to G.L.c. 249, §4 in Count V. The Popoloskis now move for judgment on the pleadings.[3]
DISCUSSION
The Popoloskis first contend that the Board constructively approved their December 3, 1997 and March 29, 1999 applications for a Disposal System Construction Permit pursuant to General Laws Chapter 111, Section 3 IE, which provides in relevant part:
Any health officer or board of health for any ciiy, town or district, whose authority includes the issuance of permits for construction, maintenance or alteration of individual sewage disposal systems for residential buildings of not more than four dwelling units, shall act upon a completed application for such permit to construct, maintain, or alter such system within forty-five days from the date upon which such completed application is filed with said health officer or board of health. If a determination on a completed application is not rendered within forty-five days by the appropriate health officer or board of health, then said permit shall be deemed to have been granted.
For the purpose of this section, a completed application shall include, but not be limited to, information satisfactory to any local board of health regarding the number of deep observation holes, all percolation test results and a plan which meets the requirements of the state sanitary code and any local health regulation . . .
For the purpose of this section, “action on a completed application” shall mean approval of said application and issuance of the permit to construct, maintain, or alter, or disapproval of said application with a written statement of the reasons for such disapproval. G.L.c. Ill, §3IE (1983).
In response to the Popoloskis’ December 3, 1997 application, the Board informed them that review of the application and plan submitted would not be undertaken because the lot had been determined to be unbuildable. The Popoloskis contend that the Board’s refusal to review their application constituted a constructive approval under G.L.c. Ill, §3 IE, citing Zaltman v. Town Clerk of Stoneham, 5 Mass.App.Ct. 248 (1977) and Pierce v. Town Clerk of Rochester, 3 Mass.App.Ct. 728 (1975).
In Pierce, the court concluded that a Planning Board’s issuance of a letter to an applicant stating that no action would be taken on a subdivision plan was not a disapproval of the plan but rather, constituted a refusal to consider the plan which after sixty days, ripened into constructive approval under G.L.c. 41, §81U. Pierce v. Town Clerk of Rochester, 3 Mass.App.Ct. at 728. Similarly, in Zaltman, the court concluded that a Planning Board’s vote to “tentatively disapprove” a subdivision plan constituted constructive approval of that plan. Zaltman v. Town Clerk of Stoneham, 5 Mass.App.Ct. at 250-51. These cases, however, involve a different statute, the Subdivision Control Law, under which a Planning Board must file with the town clerk within the statutory period a certificate of definitive action, whether approval or disapproval, in order to avoid constructive approval of a plan. See G.L.c. 41, §81U (1990); Zaltman v. Town Clerk of Stoneham, 5 Mass.App.Ct. at 251-52. In contrast, the statute at issue in the present case contains no such provision.
Chapter 111, section 31E requires a board of health to make a determination on a completed application within forty-five days in order to avoid a constructive permit approval. The statute specifically provides that a completed application shall include a plan which meets the requirements of local health regulations. The administrative record reyeals that the Popoloskis’ December 3, 1997 application was not a completed application because it did not show a wetlands delineation which had been approved by the Conservation Commission as required by section 1.04(5) of the Board of Health Regulations. Further, although G.L.c. 111, §3 IE lists several elements of a completed application, it also gives discretion to local boards to include additional requirements. In the present case, the Board of Health has added a reasonable requirement that the subject of an application be a buildable lot. Lot 1A, identified as the subject of the Popoíoskis’ application, was not a buildable lot. Moreover, to the extent the Popoloskis purported to submit an application including both Lot 1A and 9A, their application nonetheless did not show a buildable lot with 40,000 square feet of contiguous upland, because under Article 302 of the Duxbury By-law, a “lot” is defined as “A parcel of land used or set aside and available for use as the site of one or more buildings and buildings accessory thereto or for any other purpose, in one ownership and not divided by a street ...” The Pop-oloskis never submitted a plan showing Lots 1A and 9A together under common ownership. Thus, the Board’s refusal to review the December 3, 1997 septic system plan because it was incomplete did not constitute a constructive approval of the Popoloskis’ application under G.L.c. 111, §31E.
Similarly, with respect to the March 29, 1999 application, despite the fact that the Popoloskis urged the Board to consider both Lots 1A and 9A, they did not submit a plan depicting both lots in common ownership. Their application was therefore incomplete under Chapter 111, Section 3IE because it did not meet the requirements of the local regulations, and the Board’s refusal to review the septic system plan did *616 not constitute a constructive approved under that statute. The Popoloskis assert that the Board’s failure to refund their application fees is inconsistent with a decision that said applications were incomplete. However, there is no evidence in the administrative record to suggest that the Board has a policy of returning application fees where an initial review of a submission reveals an incomplete application. It is not illogical for the Board to keep the application fee given that it must expend resources to screen applications in the first instance to determine whether they are complete. Thus, the Popoloskis are not entitled to a declaratory judgment that the Board constructively approved their December 3, 1997 and March 29, 1999 applications for a Disposal System Construction Permit.
Finally, the Popoloskis seek review in the nature of certiorari, contending that the Board committed an error of law in denying the permits because such denial deprived them of the grandfather protection afforded by G.L.c. Ill, §127P. Review in the nature of certiorari is available for judicial or quasi-judicial proceedings where no other reasonably adequate remedy is available and review is necessary to correct a substantial injury or injustice arising from the proceeding at issue. Walpole v. Secretary of Executive Office of Environmental Affairs, 405 Mass. 67, 72 (1989); Warren v. Hazardous Waste Facility Site Safety Council, 392 Mass. 107, 117 (1984). The standard of review under General Laws Chapter 249, Section 4 varies according to the nature of the action for which review is sought. Forsyth School for Dental Hygienists v. Board of Registration in Dentistry, 404 Mass. 211, 217 (1989); FIC Homes of Blackstone, Inc. v. Conservation Commission of Blackstone, 41 Mass.App.Ct. 681, 684 (1996), rev. den., 424 Mass. 1104 (1997). However, the court generally reviews the action of a local board only to correct substantial errors of law apparent upon the record. Commissioner of Revenue v. Lawrence, 379 Mass. 205, 208 (1979). The test is not whether the court would reach the same result as the board; rather, the board’s decision can be disturbed only if it is based on a legally untenable ground or is arbitrary and capricious. Forsyth School for Dental Hygienists v. Board of Registration in Dentistry, 404 Mass. at 218; Fafard v. Conservation Commission of Reading, 41 Mass.App.Ct. 565, 567-68 (1996).
The Popoloskis contend that the Board erred in denying a Disposal System Construction Permit based on the lack of an ANR plan showing combined Lot 1A and 9A, which would create a new lot subject to the post-June 1996 Board of Health Regulations prohibiting the use of a mounded septic system. The Pop-oloskis argue that Lot 1A was entitled to retain the benefit of the grandfather protection of G.L.c. Ill, § 127P despite lie fact that it had to be combined with Lot 9A to be buildable. Thus, the Popoloskis contend that the Board should have approved their application to construct a mounded septic system on combined Lots 1A and 9A. General Laws Chapter 111, Section 127P provides in relevant part:
Whenever a person has submitted ... a plan referred to in section eighty-one P of chapter forty-one, the land shown on such plan shall be governed by provisions of the state environmental code, or of the provisions of local board of health regulations which differ from said code, which are in effect at the time of first submission of said plan ... if it is found such approval under the subdivision control law is not required, such provisions shall apply for a period of three years from . . . the endorsement that approval under the subdivision control law is not required. G.L.c. Ill, §127P (1981).
The Supreme Judicial Court recently held that under the Zoning Act’s grandfather provision, G.L.c. 40A, §6, the filing of a subdivision plan freezes the application of the local by-laws then in effect with respect to the land shown on the plan, not just the subdivision or lot shown on the plan. Massachusetts Broken Stone Co. v. Weston, 430 Mass. 637, 640 (2000). Thus, a developer’s 1989 filing of a subdivision plan for a 74 acre parcel of land entitled that developer to application of the town’s 1989 by-laws in 1995 when it filed a new site plan to use the 74 acres for an office building rather than for a subdivision. Id. The Pop-oloskis urge this Court to conclude that under G.L.c. Ill, §127P, the filing of the ANR plan for Lot 1A on April 8, 1996 afforded that lot the benefit of the Board of Health Regulations then in effect not just for any use that could be made of the land shown on that plan, but for the development of said land in combination with other land not owned by them at the time of the grandfathering, i.e., Lot 9A.[4] This Court does not interpret the Massachusetts Broken Stone Co. decision to require such a result. The Board properly concluded that the combination of Lots 1A and 9A would create a new lot subject to the post-June 1996 Board of Health Regulations prohibiting the use of a mounded septic system. The Board thus did not commit an error of law in denying the Popoloskis a Disposal System Construction Permit, nor was the Board’s decision arbitrary and capricious. Accordingly, the Board’s decision must stand.
ORDER
For the foregoing reasons, it is hereby ORDERED that a declaration enter DECLARING and ADJUDGING, that the Duxbury Board of Health did not constructively approve the plaintiffs’ December 3, 1997 and March 29, 1999 applications for a Disposal System Construction Permit. It is further ORDERED that the plaintiffs’ motion for judgment on the pleadings be DENIED and that the Board’s denial of a Disposal System Construction Permit be AFFIRMED.

 Counts II and IV of the complaint seek equitable relief pursuant to G.L.c. 214, §1 against the Duxbury Health Agent and Director of Inspectional Services. The parties have not specifically addressed these claims in the present motion. However, given this Court’s affirmation of the Board's decision, the plaintiffs are not entitled to equitable relief.

 It should be noted that by the time the Popoloskis resolved the wetlands delineation issue in the March 29, 1999 application, the grandfather protection for Lot 9A had expired.