Moses, J.
I. Introduction
The plaintiff, Henry Comstock, trustee of Wingaway Trust (“Comstock”), brought this action in the nature of certiorari, pursuant to G.L.c. 249, §4, seeking judicial review of the defendant Barnstable Conservation Commission’s (the “Commission”) denial of Comstock’s application for an Order of Conditions to construct a pier at its properly located at 305 Baxter Neck Road in Cotuit (the “Property”). The Commission denied Comstock’s application under G.L.c. 131, §40 (the Massachusetts Wetlands Protection Act (the “State Wetlands Act”)) in the interests of protection of land containing shellfish and protection of fisheries and under Article 27 of the Town of Barnstable Ordinances (the Barnstable Wetlands Protection Bylaw (the “Bylaw”)) in the interest of shellfish, recreation and fisheries.
The matter is before the court on Comstock’s motion for judgment on the pleadings. After review of the record of the two proceedings before the Commission, and consideration of the parties’ written submissions, the Commission’s decision should be AFFIRMED and Comstock’s motion should be DENIED.
II. Background
The following facts are taken from the administrative record. Comstock is the owner of a 3.78-acre parcel of land improved with a single-family dwelling located at the Property. On December 16, 2002, Com-stock filed a Notice of Intent (“NOI”) to the Commission under the State Wetlands Act and Article 27 of the Bylaw, seeking approval to construct and maintain a pier at his Property.
The NOI proposes construction of a fixed, pile-supported, aluminum gangway pier extending 65 feet *673 below MLW with a ramp extending to an 8 feet by 18 feet float extending 89 feet beyond MLW with a second 6 foot by 10 foot float secured interior of the end float.
On January 14, 2003, the Commission held a public hearing on Comstock’s NOI and allowed for public comment. Five individuals testified.[3] The Commission took the matter under advisement. On February 11, 2003, it held another public meeting at which the Commission presented its set of findings and adopted them to support its decision to deny the project. On or about February 18, 2003, the Commission issued a denial decision. The decision contained the following Findings.
1. The Applicant proposed a pier extending 89 feet beyond mean low water of the parcel into North Bay. The Pier was described as fixed.[4]
2. The Applicant has conducted a shellfish study at the site. It found 20 clams in the 13 sampled plots.
3. The Town Shellfish Biologist’s survey showed better productivity there, 60 individuals. However, due to the periodic and intensive commercial and recreational harvesting of shellfish in the area, the Conservation Commission finds standing stock an ineffective measure of the importance and productivity of the habitat.
4. The Town Shellfish Biologist cited the “historical productive quality of the area within the proposed project footprint.”
5. The Commission concurs with the Town Shellfish Biologist that “the site of the proposed project is an excellent shellfish habitat and area of consistent recruitment for quahogs.”
6. The site is found significant under G.L.c. 131, §40 to the interests of protection of land containing shellfish and protection of fisheries, and significant under Article 27 of the Town of Barnstable General Ordinances to the interest of shellfish, recreation and fisheries. Article 27 includes in its definition of recreation.
7. The Commission took testimony and correspondence from recreational shellfishermen who cited to the adverse impacts to the shellfisheiy should the project ensue.
8. Based upon the testimony provided, the Commission finds it more likely than not that the proposed pier will inhibit and impede access to the shellfisheiy by recreational shellfishermen. Moreover, the Commission finds that the commercial bullraking which occurs at the locus would not continue with the pier in place, despite the “progressive” aspects of the designs.
9. Inhibiting and impeding access is found to pose a significant adverse impacts to the recreation and fisheries interests as protected by Article 27.
10. The Commission finds the project will have significant cumulative impact upon shellfish, recreation and fisheries as regulated under Article 27, as it will lead to the likelihood of additional piers constructed within the shellfish area.
Based on these Findings, the Commission decided that the proposed project would violate the interests protected under the State Wetlands Act and the Bylaw, namely shellfish, fisheries and recreation.
III. Standard of Review
This court has jurisdiction to review, in the nature of certiorari, under G.L.c. 249, §4, a decision of a local conservation commission made under a wetland bylaw. FIC Homes of Blackstone v. Conservation Comm’n, 41 Mass.App.Ct. 681, 684 (1996). Section 4 provides, in part:
A civil action in the nature of certiorari to correct errors in proceedings which are not according to the course of the common law, which proceedings are not otherwise reviewable by motion or on appeal, may be brought in the supreme judicial or superior court. . . The court may enter judgment quashing or affirming such proceedings or such other judgment as justice may require.
A complaint filed through certiorari will succeed if there is a substantial error of law, which either adversely affects a material right of the plaintiff or results in manifest injustice. Johnson Products, Inc., v. City Council of Medford, 353 Mass. 540, 541 n.6 (1968); Carney v. City of Springfield, 403 Mass. 604, 605 (1995).
The standard of review varies according to the nature of the action for which review is sought. Forsyth Sch. for Dental Hygienists v. Bd. of Registration in Dentistry, 404 Mass. 211, 217 (1989). “Here, where the action sought to be reviewed was the proper exercise of the commission’s discretion in the imposition of conditions for the protection of wetlands, an ‘arbitrary and capricious’ standard should be applied.” Id. Under the arbitrary and capricious standard, the plaintiff has the burden of proving the absence of any conceivable ground upon which “reasonable [person] might deem proper to support [the decision].” T.D.J. Dev. Corp. v. Conservation Comm’n of North Andover, 36 Mass.App.Ct. 124, 128 (1994), quoting Cotter v. Chelsea, 329 Mass. 314, 318 (1952); Worcester Sand & Gravel Co. v. Bd. of Fire Prevention Regulations, 400 Mass. 464, 466 (1987).
The Commission must also base its decision upon substantial evidence in denying an order of conditions. See Lovequist v. Conservation of Dennis, 379 Mass. 7, 17 (1979). “Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion.” New Boston Garden Corp. v. Bd. of Assessors of Boston, 383 Mass. 456, 466 (1981). “The court should be slow to decide that a public board has acted unreasonably or arbitrarily. The court should cast about to discover, if possible, some ground which reasonably men might deem proper on which the *674 action can rest.” Dubuque v. Conservation Comm’n of Barnstable, 58 Mass.App.Ct. 824, 829 n.9 (2003) (citation omitted).
IV. Discussion
The analysis begins with the scope of the authority granted to the Commission. Section 6 of the Bylaw empowers the Commission to deny a permit in certain delineated circumstances;
failure to meet the requirements of the [Bylaw]; . . . failure to meet the design, specifications, performance standards, policy guidelines or other requirements in regulations of the Commission; for failure to avoid or prevent unacceptable significant or cumulative effects upon the wetlands values protected by this bylaw; where it is deemed that the denial is necessary to preserve the environmental quality of resource areas, and where no conditions are adequate to protect such values.
The State Wetlands Act seeks to protect the following interests: the public and private water supply, ground water supply, storm damage prevention, flood control, prevention of water pollution, shellfish and fisheries, and wildlife habitat. See also 310 C.M.R. 10.01. The Bylaw seeks to protect all the interests enunciated in the State Wetlands Act and 310 C.M.R. 10.01, but lists additional interests. These interests include erosion and sedimentation control, aesthetics, agricultural and aquacultural values, historical values, public trust rights in trustlands, and recreation. The Bylaw defines all these interests as “wetlands values.”
Pursuant to its power under the Bylaw, the Commission adopted regulations and guidelines for private piers and docks (“pier regulations”). One such regulation provides that “the dimensions of boats to be served shall be included — the overall length, beam and draft.” The Commission’s guideline states, in pertinent part, that “to avoid the adverse impact of too many piers located too close together, the Commission shall take into account the number, spacing, and lengths of adjacent piers.”
In denying Comstock’s NOI, the Commission based its decision upon three interests enumerated in the Bylaw: (1) shellfish; (2) fisheries; and (3) recreation. Comstock’s first challenge asserts that the Commission’s denial of the permit application on the first two grounds is preempted by the Department of Environmental Protection’s Superseding Order of Conditions (the “DEP’s Order”), approving his proposed project.
This Court ordered in April 1, 2001 that the DEP’s superseding Order be included in the record. Com-stock argues that the Bylaw solely on the issue of whether the Commission’s decision has been preempted is no more stringent than the State Wetlands Act with respect to the interests of “shellfish” and “fisheries” because the Bylaw adopted the State Wetlands Act’s definitions of these terms and thus the DEP’s Order should control. To support his contention, Comstock cites DeGrace v. Conservation Comm’n of Harwich, 31 Mass.App.Ct. 132 (1991) (holding that the DEP retains final authority under the Wetlands Act where a denial is based on a local bylaw or ordinance that is no more stringent than the Wetlands Act). However, it is not necessary to determine whether the Bylaw’s adoption of the State Wetlands Act’s definitions made the Bylaw no more stringent than the State Wetlands Act with respect to shellfish and fisheries. The Commission’s third reason for denying Comstock’s application concerned recreation and is more than an adequate basis for the Commission to decide the application, even in light of the DEP’s superseding Order. Unlike the State Wetlands Act, the Bylaw expressly seeks to protect recreational activities.[5] Accordingly, the Commission based its decision on a bylaw which provides greater protection than the State Wetlands Act. It is entitled to deny the proposal of its authority despite the DEP’s issuance of a Superseding Order. T.D.J. Dev. Corp., 36 Mass.App.Ct. at 126 (finding that local bylaw that regulates all activities in wetland buffer zone provides greater protection than State Wetlands Act); FIC Homes of Blackstones, 41 Mass.App.Ct. 681 (holding that the Blackstone Wetlands Bylaw clearly afforded greater protection than the State Wetlands Act, and thus Blackstone Conservation Commission’s denial was not preempted by the DEP’s Subsequent Order of Conditions).
The final issue to be decided by this case in whether the Commission’s decision is supported by substantial evidence. In denying Comstock the permit, the Commission has before it various documents, including a Wetlands Permit Plan showing the details of the proposed pier, a shellfish survey performed by Comstock’s shellfish surveyor, who indicated that 20 shellfish were found in the 13 sample plots in the area of the proposed pier, and the report of the Town of Barnstable’s shellfish biologist, who stated that the site “is an excellent shellfish habitat and an area of consistent recruitment for bivalve moflusks, most notably quahogs.” The Commission also considered the testimony of recreational shellfishermen, who expressed at the public hearing their great concern that the construction of the pier would negatively affect shellfishing and other recreational use of this coastline. In addition, the Commission took into account the proximity of the two existing piers in relation to the proposed pier and found that the addition of Comstock’s pier would create a seven-hundred feet wide cut off of shellfish for recreational shellfish users to access. The Commission has a legitimate concern that the construction of the pier would create adverse impacts on recreation and fisheries. Comstock’s failure to adequately address this concern is fatal to his claim. Therefore, this court concludes that the Commission’s denial of Comstock’s Notice of Intent *675 application was based on substantial evidence and was not arbitrary and capricious.
ORDER
For the foregoing reasons, it is ORDERED that the Plaintiffs Motion for Judgment on the Pleadings be DENIED and that the decision of the Barnstable Conservation Commission denying the Plaintiffs project under the Conservation by-law be AFFIRMED.

Among them are Fred Dempsey, who, on behalf of the members of “Barnstable Association of Recreational Shellfishers," stated that they are opposed to the project because the construction of the pier would create a negative effect on shellfishing and other recreational use of that coastline; Andre Sampou, John Górecki and Dave Kozlinski, who are shellfishermen, and Bruce Sandberg also objected to the proposal.

Pile supported aluminum gangway pier.

Section 14 of the Bylaw, in part, defines “recreation” as “[a]ny leisure activity or sport taking place in, on or within 100 feet of a resource area which is dependent on the resource area and its values directly or indirectly for its conduct and enjoyment. Recreational activities include, but not limited to, . . . noncommercial fishing and shellfishing . . . Structures and activities in or within 100 feet of a resource area shall not have significant effect on public recreation values.”