Connon, Richard F., J.
INTRODUCTION
This matter is before the court on plaintiffs appeal of the defendant’s denial of an order of conditions. Plaintiff, Ronald Cahaly (“Cahaly”), brought this action against the defendant, Falmouth Conservation Commission (“Commission”) and appeals the Commissions’ denial. The plaintiff, in his Notice of Intent, was seeking to construct an in-ground swimming pool and patio. The plaintiff in this action seeks certiori review under G.L.c. 249, §4 and declaratory judgment pursuant to G.L.c. 231A, §§1 and 2.
BACKGROUND
The present action came about as a result of the defendant Commission’s denial of plaintiffs Notice of Intent on November 14, 2005. Said Notice of Intent had been filed on April 22, 2005. The plaintiff proposed constructing an in-ground swimming pool and patio at his property located at 64 Bridge Street, Falmouth, Massachusetts. The project site is located to the rear of 64 Bridge Street, which had recently been constructed under a previous Order of Conditions dated February 11, 2003.
In a Notice of Intent filed on November 15, 2002, the plaintiff sought permission to demolish and remove an existing single-family residence and construct a single-family residence at 64 Bridge Street, Falmouth. The project included the installation of a swimming pool and a new Title V septic system. This Notice of Intent involved work in a buffer zone of approximately 5,000 square feet and a resource area (land subject to coastal storm flowage) by some 8,000 square feet. At the hearing on the plaintiffs Notice of Intent on January 15, 2003, there was much discussion of the location of the pool and patio in the buffer zone. At this meeting the plaintiff agreed to eliminate the pool and patio from the project. The plaintiff subsequently received approval for the remaining portion of the project as outlined in the Notice of Intent dated November 15, 2002.
On August 19, 2003, the plaintiff filed a second Notice of Intent regarding the installation of a pool at the rear of 64 Bridge Street, Falmouth. The project impacted the buffer zone by approximately 3,000 square feet, of which all but 100 square feet had been disturbed previously by earlier site occupation. The impact on the resource area was approximately 3,500 square feet. The project narrative submitted by the *357 plaintiff proposed restoring approximately 1,825 square feet of a previously disturbed buffer zone. The identified resource areas included: land under the ocean (Green Pond), salt marsh, coastal bank, and land subject to coastal storm flowage. According to the Massachusetts Natural Heritage Atlas, Estimated Habitat of Rare Wetland Wildlife, Certified Vernal Pools and High Priority Sites of Rare Species (2000-2001), there were no protected species or rare communities at the project location. All of the proposed work was to be conducted in previously disturbed areas of the buffer zone, was confined to previously developed areas of the site, and met the performance standards listed in the Falmouth Wetlands Regulations (FWR 10.18(6)(b)), which permit work to redevelop a previously developed resource area buffer. The plaintiffs planned restoration of 1,825 square feet of previously disturbed buffer zone area was 40 percent greater than the restoration required under FWR 10.18(6)(b)(5). The plaintiff also could have removed invasive plants from the area, applied loam, seeded and planted native hibiscus and woody vegetation.
On September 17,2003, the Conservation Commission conducted a hearing on plaintiffs Notice of Intent. Plaintiffs Attorney Wood suggested that the August 2003 regulations governed the project. The Commission apparently disagreed with this interpretation; on August 8, 2003, the Commission voted to deny the project without prejudice for failure to meet the performance standards of the Falmouth Wetlands Protection Act. In its written findings the Commission stated:
1. This proposed project is for redevelopment within a previously developed resource area buffer under theFWR10.18(6)(a), as revised on August 15,2003.
2. The Falmouth Conservation Commission held a public hearing on the initial iteration of this project on April 15, 2003. The plan of reference by Falmouth Engineering was dated January 6, 2003. This plan included the house under construction and a proposed swimming pool and stone patio. After hearing the Commission’s objections to the pool and patio, the proponent’s representative deleted them from the Notice of Intent filing. These objections were: (1) proposed pool’s location wholly within the velocity zone, (2) insufficient distance from the limit of work to the salt marsh, (3) insufficient distance from the limit of work to the top of the coastal bank, (4) insufficient distance from the proposed pool to the salt marsh, (5) proposed stone patio’s encroachment onto bordering vegetated wetland, and (6) no exploration of practical alternatives.
3. Falmouth Engineering’s revision plan of reference dated August 6, 2003 contained the following insufficiencies: (1) distance from the proposed stone patio to the limit was zero feet; (2) distance from the proposed pool to limit of work was five feet; (3) distance from proposed stone patio to top of coastal bank was 40 feet; (4) distance from the proposed pool to the salt marsh was 55 feet: (5) distance from the proposed pool to the top of coastal bank was 45 feet; and (6) distance from the proposed pool to the salt marsh was 60 feet.
4. FWR 10.18(6)(b)(1) states that the Conservation Commission may allow work to redevelop a previously developed resource area buffer, provided that the proposed work shall result in an improvement over existing conditions of the capacity of the resource area buffer to protect the resource area values identified in Chapter 235 of the Code of Falmouth. This proposed project would not have resulted in an improvement over existing conditions of the capacity of the resource area buffer to protect the resource area values identified in Chapter 235 of the Code of Falmouth.
5. FWR 10.18(6) (b)(c) states that the Commission may allow work to redevelop a previously developed resource area buffer, provided that the proposed work shall be located outside the resource area buffer or towards the resource area buffer boundary and away from the resource area. This proposed project was not outside the resource area buffer or towards the resource area buffer boundary and away from the resource area.
6. FWR 10.18(7)(a) and (b) refer to new development on a parcel created on or before August 15, 1998.
7. The distance from the proposed stone patio to the salt marsh was approximately 55 feet.
8. The distance from the proposed pool to the salt marsh was 60 feet.
Because the project did not meet one or more of the performance standards of the FWR, the Commission denied it without prejudice. As presented in the Notice of Intent, after the Commission’s decision the plaintiff requested and received from the Department of Environmental Protection a Superseding Order of Conditions, filed under the Wetlands Protection Act, G.L.c. 131, §40. In issuing the Superseding Order of Conditions, the Department of Environmental Protection was satisfied that the enclosed Order established a limit of work and required that the work be delineated by means of an erosion control barrier prior to the start of construction. The Superseding Order of Conditions contained additional conditions to protect the interests of the Act.
In the Notice of Intent filed on April 21, 2005, the pool project had been redesigned and improved with additional mitigating measures. The issue was whether FWR 10.18(6) or FWR 10.18(7) applied. The defendant claimed that FWR 10.18(6) applied because the proposed project is a redevelopment, which is defined as “replacement, rehabilitation or expansion of existing structures and improvement of roads.” The plaintiff contended that FWR 10.18(7) applied because the proposed project is new and not a redevelopment. *358 In a narrative attached to the Notice of Intent, the plaintiff outlined the Commission’s acknowledgment in a similar case that a proposed pool and patio project was not a redevelopment.
Plaintiff argued that the project involved new construction within a resource buffer on a parcel created prior to August 15, 1998; as such, it is subject to the standards applied under FWR 10.18(7). This provision recognized that construction on lots created prior to August 15, 1998, cannot always satisfy setback requirements for various resource areas as stated elsewhere in FWR 10.18(8). Under. 10.18(7), the Commission may issue a permit for an activity on a parcel that existed as of August 15, 1998, with less buffer than required under FWR 10.18(8)(a) and (b), provided that no practicable alternative exists that would provide the required buffer. The original house on the parcel of land in question had been built in •1962. The Order of Conditions dated January 27,2003 allowed the plaintiff to demolish that home and reconstruct a new house on the same footprint. Construction commenced in spring of 2003. FWR 10.18(7) was adopted on August 15, 2003.
On May 11, 2005, the Commission held a hearing on the applicant’s proposal to install the swimming pool, patio, native plants, and the clearing, grading, and landscaping associated with the project. At this hearing, an engineer for the plaintiff stated that the area in, question had been cleared and degraded for decades and that there was no impact on a resource area. He also stated that the project met performance standards and that the planting was an improvement. Commissioner McLaughlin stated that the project was given partial compliance because the planting had not yet been done. He went on further to state that 787 plants will not cover the square footage of the area; he agreed with the landscaper that vegetation should not be removed from the bank. The Commission also pressed for the removal of a chain link fence, which it believed would obstruct the passage of wildlife.
The Commissioner stated that he had a hard time believing there was no practical alternative because he thought not having a pool was an alternative. The Commissioner declared the plan of reference “inadequate” and demanded that the applicant return with a revision that included what was on the ground. Despite the landscape architect’s protestations that such a plan would be difficult to create, Commissioner McLaughlin asserted that there was technology available to provide such a plan. He also stated that he would like the applicant to purchase, but not necessarily install, the required planting material to show good faith and also to stake the placement of the plants. The audience had been concerned that treated water from the pool could be discharged into the pond. This chlorinated water could kill larvae and remain on the biologic water’s surface.
The hearing was continued until July 13, 2005. At this hearing the plaintiffs attorney argued that building a pool did not fit the definition of redevelopment, that the project met its setback requirements, that there was no other location for the pool, and that the Commission’s planting requirements had been addressed. The Commission members noted that the proposed pool was in approximately the same location as had been proposed in 2003 when it denied the application. Because the Commission was concerned whether the patio extended to the foundation and if the plaintiff would make the patio part of the house structure, the plaintiff agreed to a deed restriction and guaranteed that no further expansion would occur. The plaintiff also agreed to the Commission’s request to install dry wells in order to accommodate the pool’s drainage. Commissioner McLaughlin moved to close the hearing and take the matter under advisement. The motion was seconded and unanimously approved.
At the next meeting on August 18, 2005, Mr. Bucelli, an engineer representing the plaintiff, distributed a revised plan. He explained that the revised plan addressed the runoff from the concrete patio and the velocity zone. The plaintiff had added some drainage on the patio and the dry well, which served as a discharge point. The plan showed the velocity zone; the plaintiff had eliminated the slab comer of the patio to prove that it was not in the 25-foot velocity zone. At the corner of the patio, there had been a four-inch gap between the foundation of the home and patio that the commissioners felt was an extension of the existing structure, despite the four-inch separation. The commissioners remained concerned that the pool could be utilized as an addition to the house in the future. They discussed a deed restriction, to which the plaintiff had already agreed. The commissioners raised the issue of the chain link fence, and the plaintiff agreed to change its location.
The matter was once again continued to another meeting on August 31, 2005. At that meeting, the engineer for the plaintiff advised the Commission that the new plans moved the existing fence to the landward side close to the pool and removed a portion of the boardwalk. The engineer also submitted a legal document — a deed restriction guaranteeing that there would never be any structure in place of the pool. If the Commission would have issued a favorable decision, the restriction would have been a condition of the approval.
Commissioner McLaughlin, commenting on the proposal by the plaintiff, stated that the revised plan did not address the Commission’s concerns. He mentioned that the planting was still not in. Echoing the concerns about the lack of planting, another commissioner suggested that the fence be moved back adjacent to the patio. The plaintiffs engineer reminded the Commission that the planting had not been installed *359 because the application for the pool had not yet been approved.
The hearing was closed and continued once again until September 21, 2005. At that hearing Commissioner Wilson stated, “This is a denial without prejudice for failure to meet performance standards” and read the findings. Commissioner Schmidt moved to adopt the Order of Conditions as read, and Commissioner McLaughlin seconded the motion. Commissioner Bird asked for clarification on certain points in the denial, and Commissioner McKay suggested that the one-foot limit of work and the six- to seven-foot limit of work language could be deleted from the order.
In the denial of the Order of Conditions, the Commission identified the resource area on which the project was proposed as within 100 feet of a coastal bank, salt marsh, and land under ocean and on land subject to coastal storm flowage. In its findings, the Commission stated that although the applicant argued that 10.18(7) applied, the Commission believed that the project should be reviewed under 10.18(6) because the proposed project was within a previously developed resource area buffer under 10.18(6), as revised on August 15, 2003. According to finding number 6, any difficulty in siting the pool was self-inflicted and the result of not exploring alternative locations for the house when previously before the Commission. Finding number 7 stated that the installation of an in-ground swimming pool was not a new development. According to finding number 8, the proposed project was an expansion of an existing single-family residence by an accessory structure. According to finding number 9, the proposed project was moving closer to the resource area protected under the Falmouth Wetlands bylaw. Finding number 13 stated that the proposed pool as depicted on the revised plan of reference by applicant’s engineer dated June 30, 2005, is similar to the pool proposed on January 15, 2003.
In addition, the Commission stated that the most recent application contained the following insufficien-cies: (1) distance from the proposed concrete patio to the limit of work is less than one foot; (2) distance from the proposed pool to the limit of work is between six and seven feet; (3) distance from the proposed concrete patio to the top of coastal bank is 26 feet; (4) distance from proposed concrete patio to the salt marsh is 55 feet; (5) distance from the proposed pool to the top of coastal bank is 32 feet at the closest point; and (6) distance from the proposed pool to the salt marsh is 60 feet. According to finding number 16, salt marshes are fragile, dynamic, and productive ecosystems. They remove nutrients and pollutants from bordering bodies of water and protect them from an influx of pollution, bacteria, sediments, and nutrients. Salt marshes are important nurseiy grounds for marine life, provide wildlife habitat, and offer protection from flooding and erosion. A buffer of 75 feet is necessary to prevent disturbance and degradation, which would impair the marsh’s ability to function.
According to finding number 19, at the May 11, 2005 hearing, the Commission requested that the plaintiff purchase and place on the property the mitigation planting required by the Order of Conditions issued for the house. According to finding number 20, the plaintiff did not purchase the required planting. Finding number 21 stated that, even if the project had been reviewed under 10.18(7), the plaintiff did not explore all practicable alternatives. Possible alternatives included: having no swimming pool (finding 22), a lap pool (finding 23), a spa-hot tub (finding 24), or locating the pool in the front yard, which would have been permissible under FWR (finding 25).
Because of voting irregularities involving the quorum at the Septémber meeting, the Commission voted again on November 9, 2005. They denied the permit without prejudice and cited eight specific findings as their basis.
DISCUSSION
A writ in the nature of certiori under G.L.c. 249, §4 is the appropriate procedural remedy in this case. General Laws c. 249, §4 provides in part: “A civil action in the nature of certiori can correct errors in proceedings which are not according to the course of the common law, which proceedings are not otherwise reviewable by motion or by appeal may be brought in the supreme judicial or superior court... the court may enter judgment quashing or affirming such proceedings or such other judgment as justice may require.”
Judicial review under G.L.c. 249 is limited to correcting substantial errors of law apparent on the record and which adversely affect material rights. Carney v. City of Springfield, 403 Mass. 604, 605 (1995); MacHenry v. Civil Service Comm’n, 40 MassApp.Ct. 632, 634 (1996), rev. denied, 423 Mass. 1106 (1996). In reviewing the Commission’s decision, the first issue is the standard of review applicable to the plaintiffs complaint for relief in the nature of certiori under G.L.C. 249, §4. The standard of review varies according to the nature of the action for which review is sought. Forsyth School for Dental Hygienists v. Board of Registration in Dentistry, 404 Mass. 211, 217 (1989). An arbitrary and capricious standard should be applied where the action sought to be reviewed is the proper exercise of the Commission’s discretion in imposing conditions for the protection of wetlands. T.D.J. Development Corp. v. Conservation Comm’n of North Andover, 36 Mass.App.Ct. 124, 128 (1994), rev. denied, 418 Mass. 1103 (1994), citing Forsyth, 404 Mass. at 217. A decision is arbitrary and capricious if “there is no ground which ‘reasonable men might deem proper’ to support it.” T.D.J. Development Corp., 36 Mass.App.Ct. at 128, quoting Cotter v. Chelsea 329 Mass. 314, 318 (1952).
This case involves the proper exercise of the Commission’s discretion in imposing conditions for the protection of wetlands because the plaintiffs properly is within a buffer zone as defined by the FWR See T.D.J Development Corp., 36 MassApp.Ct. at 128. According to the FWR a buffer strip is a strip of undisturbed, natural vegetated buffer between human activity and *360 areas subject to protection. The buffer zone is the area of land extending 100 feet radially landward from the boundary of any resource area as specified by the FWR To build a buffer strip in the buffer zone parallel to the edge of the wetlands line normally requires the Commission to issue an order of conditions. Per these definitions, the plaintiffs property is subject to the Commission’s jurisdiction and must obtain an order of conditions prior to proceeding with any work in the area, including the installation of an in-ground swimming pool.
The plaintiffs proposal involves minor alterations to the buffer of certain resource areas. The proposal does not harm any coastal bank, salt marsh, or land under the ocean resource areas, each of which is protected by the FWR The DEP issued a Superseding Order of Conditions that established a limit of work and required an erosion control barrier prior to the start of construction. While the Commission is free to impose more stringent standards than the DEP, the DEP’s order demonstrates that the project could be conducted safely and with minimal disturbance to the resource areas. The plaintiff has worked to hold any disturbance of previously vegetated areas to a minimum; all but 100 square feet of the area in question had previously been disturbed by prior development. The plaintiffs project would restore 1,825 square feet of previously disturbed areas of the buffer zone. This restoration amounts to 40 percent more than what is required by FWR 10.18(6)(b)(5). The plaintiff could have improved the area by removing invasive plaints, applying loam, and seeding and planting native hibiscus and woody vegetation.
In addition, the proposed pool and patio project does not constitute redevelopment as governed by FWR 10.18(6); rather, the project is new development on an existing parcel as outlined in FWR 10.18(7). FWR 10.18(6) defines redevelopment as “replacement, rehabilitation, or expansion of existing structures and improvements of existing roads.” The plaintiffs project does not fall into any of these categories. In a previous case regarding the construction of a pool and patio, the Commission acknowledged that the project was not redevelopment. The plaintiffs proposal is governed by 10.18(7), which allows the Commission to issue a permit for activity on a parcel that existed as of August 15, 1998 with less buffer than normally required, provided that no practicable alternative to ensure the buffer exists. The plaintiffs parcel qualifies under this provision, as the original house was built in 1962. Moreover, the alternative solutions proposed by the Commission are not practicable and reveal the capriciousness of its ruling. Not building a pool, building a lap pool or spa instead, or locating the pool in the front yard are not viable options. To suggest these alternatives shows a lack of consideration for the plaintiffs serious and repeated efforts to meet the Commission’s demands.
The plaintiff petitioned the Commission on numerous occasions and altered the proposal in response to the Commission’s specifications. The plaintiff filed the original Notice of Intent in November 2002. Over the course of three years, the plaintiff returned to the Commission numerous times before receiving its last denial on November 2005. The plaintiff was responsive to the Commission’s reasonable demands. For example, when the Commission expressed concern that the patio and pool could be changed to become permanent structures, the plaintiff agreed to a deed restriction. Furthermore, the Commission’s request to purchase and lay out plants prior to approval was unreasonable, given the cost of purchasing materials without a guarantee of approval.
The plaintiffs willingness to address Commission’s concerns, the unwillingness of the Commission to respond reasonably to the plaintiffs efforts, and the statutory guideline set forth by FWR 10.18(7) all suggest that the plaintiffs permit ought to be approved.
ORDER
For the foregoing reasons, it is hereby ORDERED that declaratory judgment be entered for the plaintiff. The Commission’s order is vacated, and the order of conditions is granted.